Frommert v. Conkright

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2012

(Argued: November 15, 2012          Decided: December 23, 2013)

Docket No. 12-67-cv

_____

PAUL J. FROMMERT, DONALD S. FOOTE, THOMAS I.
BARNES, RONALD J. CAMPBELL, FRANK D. COMMESSO,
WILLIAM F. COONS, JAMES D. GAGNIER, BRIAN L.
GAITA, WILLIAM J. LADUE, GERALD A. LEONARDO, JR.,
FRANK MAWDESLEY, HAROLD S. MITCHELL, WALTER J.
PETROFF, RICHARD C. SPRING, PATRICIA M. JOHNSON,
F. PATRICIA M. TOBIN, NANCY A. REVELLA, ANATOLI G.
PUSCHKIN, WILLIAM R. PLUMMER, MICHAEL J. MCCOY,
ALAN H. CLAIR, LARRY J. GALLAGHER, NAPOLEON B.
BARBOSA, ALEXANDRA SPEARMAN HARRICK, JANIS A.
EDELMAN, PATRICIA H. JOHNSTON, KENNETH P.
PARNETT, JOYCE D. CATHCART, FLOYD SWAIM, JULIE
A. MCMILLIAN, DENNIS E. BAINES, RUBY JEAN
MURPHY, MATTHEW D. ALFIERI, IRSHAD QURESHI,
RICHARD C. CRATER, GAIL J. LEVY, JOHN A. WILLIAMS,
CRYSTAL THORTON, CHARLES R. DRANNBAUER,
WILLIAM M. BURRITT, JANICE ROSS HEILER, JOSEPH
MCNEIL, THOMAS F. MCGEE, VINCENT G. JOHNSON, F.
COLT HITCHCOCK, RONNIE TABAK, MARTHA LEE
TAYLOR, KATHY FAY THOMPSON, MARY BETH ALLEN,
CRAIG SPENCER, LINDA S. BOURQUE, THOMAS
MICHAEL VASTA, FRANK C. DARLING, CLARK C.
DINGMAN, CAROL E. GANNON, JOSEPH E. WRIGHT,
DAVID M. ROHAN, DAVID B. RUDDOCK, CHARLES
HOBBS, CHARLES ZABINSKI, CHARLES J.
MADDALOZZO, JOYCE M. PRUETT, WILLIAM A.
CRAVEN, MAUREEN A. LOUGHLIN JONES, KENNETH W.
PIETROWSKI, BONNIE COHEN, LAWRENCE R. HOLLAND,
GAIL A. NASMAN, STEVEN D. BARLEY, DONNA S.

LIPARI, ANDREW C. MATTELIANO, MICHAEL HORROCKS, CANDICE J. WHITE, DENNIS E. BAINES, KATHLEEN E. HUNTER, JOHN L. CRISAFULLI, DEBORAH J. DAVIS, BRENDA H. MCCONNELL, KATHLEEN A. BOWEN, ROBERT P. CARANDDO, TERENCE J. KURTZ, WILLIAM J. CHESLOCK, THOMAS E. DALTON, LYNN BARNSDALE, BRUCE D. CRAIG, GARY P. HARDIN, CLAUDETTE M. LONG, DALE PLATTETER, MARY ANN SERGEANT, MOLLY WHITE KEHOE, DAVID K. YOUNG, LESLIE ANN WUNSCH, RICHARD J. GLIKIN, EUGENE H. UPDYKE, MICHAEL R. BENSON, ALVIN M. ADAMS, RONNIE KOLNIAK, JAMES J. FARRELL, ROBERT L. BRACKHAHN, BENJAMIN C. ROTH, CARMEN J. SOFIA, KATHLEEN W. LEVEA, FREDERICK SCACCHITTI, PAUL DEFINA, JAMES G. WALLS,

*Plaintiffs-Appellants,*

v.

SALLY L. CONKRIGHT, XEROX CORPORATION PENSION PLAN ADMINISTRATOR, PATRICIA M. NAZEMENTZ, XEROX CORPORATION PENSION PLAN ADMINISTRATOR, XEROX CORPORATION, LAWRENCE M. BECKER, XEROX CORPORATION PLAN ADMINISTRATOR, XEROX CORPORATION RETIREMENT INCOME GUARANTEE PLAN, LAWRENCE BECKER, XEROX CORPORATION PLAN ADMINISTRATORS,

*Defendants-Appellees.*

_____

Before: KEARSE, STRAUB, and POOLER, *Circuit Judges*.

Appeal from the decision and order of the United States District Court for the Western District of New York (David G. Larimer, *J.*). This is our third decision in this litigation for the recovery of benefits under Xerox Corporation's retirement plan. *See*

*Frommert v. Conkright*, 535 F.3d 111 (2d Cir. 2008); *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006).  The Supreme Court reversed our most recent decision, holding that we had erred in holding that, having found the plan administrator's first interpretation of the retirement plan to be invalid, the district court could properly refuse to defer to the plan administrator's subsequent interpretation of the plan.  *Conkright v. Frommert*, 559 U.S. 506, 130 S. Ct. 1640, 1651-52 (2010).  On remand, the district court applied deferential review and held that the plan administrator's proposed offset was a reasonable interpretation of the retirement plan.  *Frommert v. Conkright*, 825 F. Supp. 2d 433, 438-43 (W.D.N.Y. 2011). The district court also held that the retirement plan gave adequate notice of the offset to plan participants. *See id.* at 444-47.  Plaintiffs argue that the plan administrator's new interpretation (1) violates ERISA's notice provisions and (2) is an unreasonable interpretation of the retirement plan.  They further argue (3) that the district court erred in failing to permit plaintiffs to conduct discovery concerning whether the plan administrator was operating under a conflict of interest.  We hold that the proposed offset is an unreasonable interpretation of the retirement plan and that it violates ERISA's notice provisions.  Although we uphold the challenged discovery order, we VACATE the judgment and REMAND the case to the district court for further proceedings.

_____

PETER K. STRIS, Stris & Maher LLP (Brendan Maher, *on the brief*), Gardena, CA, *for Plaintiffs-Appellants*.

MARGARET A. CLEMENS, ESQ., Littler Mendelson, P.C., Rochester, NY, *for Defendants-Appellees*.

EDWARD D. SIEGER, Senior Appellate Attorney (M. Patricia Smith, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Elizabeth Hopkins, Counsel for Appellate and Special Litigation, *on the brief*), U.S. Department of Labor, Washington, D.C., *for Amicus Curiae the Secretary of Labor, in support of Plaintiffs-Appellants.*

Maria Ghazal, Business Roundtable, Washington, D.C.; Jeffrey A. Lamken, MoloLamken LLP, Washington, D.C.; Robin S. Conrad, Shane B. Kawka, National Chamber Litigation Center, Inc., Washington, D.C.; Janet M. Jacobson, American Benefits Council, Washington, D.C.; Scott J. Macey, Kathryn Ricard, The ERISA Industry Committee, Washington, D.C., for *Amici Curiae Business Roundtable, Chamber of Commerce of the United States of America, The ERISA Industry Committee, and American Benefits Council, in support of Defendants-Appellees.*

POOLER, *Circuit Judge*:

Plaintiffs-Appellants ("Plaintiffs"), who appeal from the December 14, 2011 order of the Western District of New York (David G. Larimer, *J.*), have brought claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against the Xerox Corporation ("Xerox"), the Xerox Retirement Income Guarantee Plan ("the Xerox Plan" or "the Plan"), and individually named retirement plan administrators (collectively, the "Plan Administrator"). This is our third decision in this litigation. *See Frommert v. Conkright*, 535 F.3d 111 (2d Cir. 2008) (*Frommert II*); *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) (*Frommert I*). The Supreme Court reversed our most recent decision, holding that we had "erred in holding that the District Court could refuse to defer to the Plan Administrator's interpretation of the Plan on

4

remand, simply because [we] had found a previous related interpretation by the Administrator to be invalid." *Conkright v. Frommert*, 559 U.S. 506, 130 S. Ct. 1640, 1651 (2010). On remand, the district court applied deferential review and held that the Plan Administrator's proposed offset was a reasonable interpretation of the retirement plan. *Frommert v. Conkright*, 825 F. Supp. 2d 433, 438-43 (W.D.N.Y. 2011). It also concluded that the retirement plan gave participants adequate notice of the offset. *See id.* at 444-47. Plaintiffs argue that this new interpretation (1) violates ERISA's notice provisions and (2) is an unreasonable interpretation of the retirement plan. They further argue (3) that the district court erred in failing to permit plaintiffs to conduct discovery concerning whether the Plan Administrator was operating under a conflict of interest. We agree with the first two arguments, hold that the proposed offset is an unreasonable interpretation of the retirement plan, and hold that it violates ERISA's notice provisions. We therefore VACATE the judgment and REMAND the case to the district court for further proceedings.

## BACKGROUND

We presume familiarity with the facts and procedural history of this case as set out in our prior decisions, *see Frommert II*, 535 F.3d 111; *Frommert I*, 433 F.3d 254, but state them insofar as they are relevant to the issues presented in this appeal.

This litigation concerns the 1989 restatement of the Xerox Plan, a floor-offset retirement plan. "A floor-offset plan uses a defined-benefit structure (with pension payments linked to years of work and high salary) to buffer the uncertainty of a

5

defined-contribution system (where pension payments depend on the performance of investments in each employee's account)." *White v. Sundstrand Corp.*, 256 F.3d 580, 581 (7th Cir. 2001); *see also* 29 U.S.C. § 1002(34) (providing definition of defined contribution plans under ERISA); 29 U.S.C. § 1002(35) (providing definition of defined benefit plans under ERISA). Xerox's floor-offset plan was described in *Frommert I*, 433 F.3d at 257. *See also Miller v. Xerox Corp. Ret. Income Guar. Plan*, 464 F.3d 871, 873 (9th Cir. 2006); *Layaou v. Xerox Corp.*, 238 F.3d 205, 206 (2d Cir. 2001). It has three components: (1) the Retirement Income Guarantee Plan formula ("RIGP"), which is used to calculate a defined benefit annuity;[1] (2) the Cash Balance Retirement Account ("CBRA"), a defined contribution system consisting of an account with yearly contributions from Xerox, accruing interest at a rate of one percent above the one-year Treasury Bill rate, along with the beneficiary's transferred balance, if any, from Xerox's pre-1990 profit sharing plan; (3) the Transitional Retirement Account ("TRA"), a defined contribution system consisting of an account with the beneficiary's transferred balance from the pre-1990 profit sharing plan, increased based on investment results. The values in the beneficiary's CBRA and TRA are converted into annuities, after which the monthly values of the three accounts are compared, and the beneficiary receives benefits from the account with the greatest monthly value. Because RIGP, unlike CBRA and TRA,

---

[1] The formula takes 1.4% of the participant's highest average yearly pay, based on the participant's five highest-paying calendar years, and multiplies it by the participant's years of service, up to 30.

6

provides a set amount independent of market performance, it acts as a "floor":  The highest monthly amount will always be at least the amount provided for by RIGP.

Plaintiffs are Xerox employees who left the company but were subsequently rehired, having received a lump-sum distribution of their then-accrued pension benefits when they left.  At issue in this case is how the prior lump-sump distribution affects the determination of benefits outlined above, both in the comparison of the three accounts and in the calculation of actual benefits.  Prior to this litigation, the Xerox Plan used the so-called phantom account offset method to take into account the lump-sum distribution. *See Frommert I*, 433 F.3d at 260.  The method involved a three-step calculation:

> First, the present value of any of the employee's accounts are calculated as if the lump sum had remained in the account and been invested throughout the period following distribution.  Second, the current values of the CBRA and TRA that previously were distributed (i.e., the estimated values) are added to any actual amounts earned since the employee's rehire date. Using these total amounts, a comparison is made among the three account values—RIGP, total CBRA, and total TRA—to determine which method yields the greatest benefits in a monthly value.  Third, the account with the greatest monthly value is reduced by the current value of the employee's prior distribution in that same account.

*Id.* (internal footnotes omitted).  Because the RIGP benefit is determined by formula, without reference to an underlying account, no estimated value is added to RIGP in step 2. *Id.* at 260 n.5.  However, if RIGP yields the greatest benefits in monthly value, it is reduced by the estimated increased value of the lump sum under either TRA or CBRA (whichever is higher), in step 3.  *Id.* at 260 n.6.  The employee received a monthly pension benefit equal to the reduced amount.

Plaintiffs brought suit under Section 502(a)(1)(B) of ERISA, which provides that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[2] Plaintiffs argued that the use of the phantom account offset method to take into account the prior lump-sum distribution was an improper interpretation of the Plan and that, therefore, they were entitled to greater benefits. In *Frommert I*, we agreed and vacated the district court's grant of summary judgment. *Frommert I*, 433 F.3d at 268. Our holding rested on our definition of an "amendment" of an ERISA plan "as taking place at the moment when employees are properly *informed* of a change" through provision of a valid summary plan description ("SPD") that complied with other ERISA provisions.[3] *Id.* at 262-63, 266-68; *see also* 29 U.S.C. § 1022 (describing SPD requirements and stating that SPDs must "be sufficiently accurate and comprehensive to

---

[2] Plaintiffs also brought suit under Section 502(a)(3), which provides, in part, that a "civil action may be brought . . . by a participant or beneficiary . . . to obtain other appropriate equitable relief (i) to redress [ERISA] violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). We affirmed the district court's dismissal of this claim with respect to payment of benefits, "[b]ecause adequate relief [was] available under [Section 502(a)(1)(B)]." *Frommert I*, 433 F.3d at 270. However, with respect to Plaintiffs' claim that the Plan Administrator breached its fiduciary duty by supplying misleading SPDs, we held that "there [was] a triable issue of fact." *Id.* at 271.

[3] Thus, two SPD requirements under our ERISA case law are: (1) plan administrators must provide SPDs to plan participants during the ordinary administration of a plan, as required by the statute, *see* 29 U.S.C. § 1022, and (2) plan administrators must provide SPDs to plan participants in order to validly *amend* the plan.

8

reasonably apprise such participants and beneficiaries of their rights and obligations under the plan"); 29 U.S.C. § 1054(h)(1)-(2) (requiring that notice be given for amendments to pension plans that result in a significant reduction of future benefits); *id.* § 1054(h)(3) ("Except as provided in regulations prescribed by the Secretary of the Treasury, the notice required by paragraph (1) shall be provided within a reasonable time before the effective date of the plan amendment."). We held that the Plan did not contain the phantom account offset at its inception and that it was never validly amended.[4]

*Frommert I*, 433 F.3d at 264-68. Consequently, use of the phantom account "constituted a prohibited reduction of justified expectations of rehired employees' accrued benefits in contravention of § 204(g) [of ERISA]."[5] *Id.* at 263. Our interpretation of the Xerox Plan required us to determine the appropriate level of deference to grant the Plan Administrator. "We review a plan administrator's decision de novo unless the plan vests the administrator with 'discretionary authority to determine eligibility for benefits or to

---

[4] Specifically, we held that an SPD, 1995 Xerox Plan Benefits Update, was insufficiently accurate under Section 102 of ERISA, and that the Update violated then-existing Section 204(h) of ERISA, which required plan administrators to provide fifteen days notice of any amendment creating "a significant reduction in the rate of future benefit accrual." *Frommert I*, 433 F.3d at 266-68 (quoting 29 U.S.C. § 1054(h) (2000)). We also held that the 1998 Benefits Update violated Section 204(h) and therefore was effective only to employees rehired after the issuance of the Update. *Id.* at 268-69. We had previously held that the Xerox Plan SPDs up through 1994 failed to include the phantom account offset. *See Layaou*, 238 F.3d at 210-12.

[5] Section 204(g) provides "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(d)(2) or 1441 of this title." 29 U.S.C. § 1054(g)(1).

construe the terms of the plan,' in which case we use an 'abuse of discretion' standard."

*Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Under this *Firestone* deference, "[a] court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (internal quotation marks omitted). Section 10.2(e) of the Xerox Plan provides that the Plan Administrator "may . . . [c]onstrue the Plan and the Trust Agreement thereunder." The district court held that such language was sufficient to require deferential review, *Frommert v. Conkright*, 328 F. Supp. 2d 420, 430-31 (W.D.N.Y. 2004), a determination that the parties have not contested on appeal. In *Frommert I*, we found the Plan Administrator's use of the phantom account offset unreasonable under both *Firestone* deference and de novo review.[6] 433 F.3d at 266 n.11.

We instructed the district court as follows:

> On remand, the remedy crafted by the district court for those employees rehired prior to 1998 should utilize an appropriate pre-amendment calculation to determine their benefits. We recognize the difficulty that this task poses because of the ambiguous manner in which the pre-amendment terms of the Plan described how prior distributions were to be treated. As guidance for the district court, we suggest that it may wish to employ

---

[6] We examined the use of the phantom account offset under both standards because our holding in *Frommert I* required an interpretation of both the Plan and its SPDs, 433 F.3d at 265-66, and it is an open question whether *Firestone* deference is applicable to a plan administrator's interpretation of SPDs, *Layaou*, 328 F.3d at 211-12.

10

equitable principles when determining the appropriate calculation and fashioning the appropriate remedy.

*Id.* at 268. On remand, the district court used as an offset the nominal value of the prior lump-sum distribution. *Frommert v. Conkright*, 472 F. Supp. 2d 452, 458-59 (W.D.N.Y. 2007).

In adopting this *Layaou* offset—so-named because the same offset was used in an earlier decision interpreting the Xerox Plan, *see Layaou*, 238 F.3d at 209-12; *Layaou v. Xerox Corp.*, 330 F. Supp. 2d 297 (W.D.N.Y. 2004)—the district court failed to apply a deferential standard of review and rejected alternate methods of calculating the offset proposed by the Plan Administrator. *Frommert*, 472 F. Supp. 2d at 456-59. We affirmed the district court's interpretation of the Xerox Plan and noted that Defendants had "identified no authority in support of the proposition that a district court must afford deference to the mere *opinion* of the plan administrator in a case, such as this, where the administrator had previously construed the same terms and we found such a construction to have violated ERISA." *Frommert II*, 535 F.3d at 119. However, the Supreme Court reversed and remanded the case to us, holding that we "erred in holding that the District Court could refuse to defer to the Plan Administrator's interpretation of the Plan on remand, simply because [we] had found a previous related interpretation by the Administrator to be invalid." *Conkright*, 130 S. Ct. at 1651. We then remanded back to the district court to consider, applying *Firestone* deference, the appropriate offset.

11

The district court applied *Firestone* deference and adopted the offset method proposed by the Plan Administrator, which converts the prior lump-sum distribution into an annuity using a benchmark interest rate,[7] decreases RIGP by this converted value, and then compares the monthly values of the three components.[8] *Frommert*, 825 F. Supp. 2d at 438-40. The district court rejected Plaintiffs' argument that the Plan Administrator's proposed offset violated ERISA's notice provisions and further rejected their request for additional discovery to determine whether the Plan Administrator was operating under a conflict of interest. *Id.* at 444-48. Plaintiffs now appeal, joined by the Secretary of Labor (the "Government") as amicus curiae.[9]

## DISCUSSION

Plaintiffs and the Government make three arguments on appeal. First, they argue that the Plan Administrator's offset method violates ERISA's notice provisions. Second, they argue that the offset method is not a reasonable interpretation of the Plan under *Firestone* deference. Finally, they argue that the district court erred in failing to permit

---

[7] The Plan Administrator proposed using discount rates set by the the Pension Benefit Guaranty Corporation ("PBGC") to make the conversion, capped at 8.5% compounded annually.

[8] This new approach thus differs from the phantom offset method in two ways. First, it uses a benchmark interest rate to convert the value of the prior lump-sum distribution rather than increasing the distribution by the hypothetical gain of the lump sum had it remained in the CBRA or TRA accounts. Second, it decreases the value of RIGP before comparing the three components, rather than first increasing the values of CBRA and TRA.

[9] The Business Roundtable, Chamber of Commerce of the United States of America, ERISA Industry Committee, and American Benefits Council have filed an amicus brief in favor of Defendants.

Plaintiffs to conduct discovery concerning whether the Plan Administrator was operating under a conflict of interest.

We pause to note that the posture of this litigation after *Frommert I* requires us to interpret the Xerox Plan anew. As Defendants pointed out before the Supreme Court, "the newly-framed question of how the offset should be applied based on the 'pre-amendment plan terms' arose for the first time on remand" out of *Frommert I*. Brief for the Petitioners at 51, *Conkright v. Frommert*, 559 U.S. 506 (2010) (No. 08-810), 2009 WL 2954165. The Plan Administrator is now answering this new question. Its interpretation of the Plan, as the Supreme Court held, is entitled to *Firestone* deference. *Conkright*, 130 S. Ct. at 1651. Furthermore, the new interpretation put forth by the Plan Administrator must comply with the other provisions of ERISA, including ERISA's notice requirements.

Upon review, we hold that the proposed offset is an unreasonable interpretation of the retirement plan and further hold that it violates ERISA's notice provisions, but we affirm the district court's decision to deny Plaintiffs' request for additional discovery.

**I. Reasonable Interpretation**

Plaintiffs argue that the Plan Administrator's offset approach was an unreasonable interpretation of the Xerox Plan. The district court reviewed the offset under *Firestone* deference and held that it was reasonable. *Frommert*, 825 F. Supp. 2d at 439-41. We review a district court's interpretation of an employee benefits plan for abuse of discretion. *Frommert II*, 535 F.3d at 118; *but see Conkright*, 130 S. Ct. at 1651-52 (declining to "reach the question whether [we] also erred in applying a deferential

13

standard of review to the decision of the District Court on the merits"). "We review a plan administrator's decision de novo unless the plan vests the administrator with 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' in which case we use an 'abuse of discretion' standard." *Nichols*, 406 F.3d at 108 (quoting *Firestone*, 489 U.S. at 115). Under this *Firestone* deference, "[a] court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Celardo*, 318 F.3d at 146 (internal quotation marks omitted). "However, where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995) (internal quotation marks and alteration omitted). Upon review, we hold that, even with the deferential standard of review afforded to both the district court and the Plan Administrator, the offset is inconsistent with the Plan's plain terms and is therefore an unreasonable interpretation of the Plan.

As discussed above, the offset approach proposed by the Plan Administrator converts the prior lump-sum distribution into an annuity using a chosen interest rate (based on rates set by the PBGC), decreases RIGP by this converted value, and then compares the monthly values of the three components, CBRA, TRA, and RIGP. Section 9.6 of the Plan provides, in relevant part:

14

Section 9.6. <u>Nonduplication of Benefits</u>. In the event any part of or all of a Member's accrued benefit is distributed to him prior to his Normal Retirement Date, if . . . such Member at any time thereafter recommences active participation in the Plan, the accrued benefit of such Member based on all Years of Participation shall be offset by the accrued benefit attributable to such distribution.

Section 1.1 of the plan defines "accrued benefit" as "[t]he normal retirement benefit which a Member has earned up to any date, and which is payable at Normal Retirement Date in an amount computed in accordance with Section . . . 4.3." Section 4.3 describes the three components of the Xerox Plan. Sections 4.3(e) and (f) provide that the balances in the CBRA and TRA are converted into annuities "using annuity rates established by the PBGC." Defendants argue and the district court held that the proposed offset approach is a reasonable interpretation of these provisions. Specifically, Defendants argue that, because Section 9.6 provides that a beneficiary's benefits must be offset by "accrued benefits," the RIGP benefit must be reduced by the amount of the prior lump-sum distribution. Because RIGP is expressed in the form of an annuity, the lump-sum distribution must be converted into an "actuarially equivalent" annuity before making the offset. Finally, because Section 1.1 defines "accrued benefits" with reference to Section 4.3, the appropriate rates for use in making this conversion are those provided in Section 4.3.

We hold this is unreasonable because it makes the rehired employees worse off under the Plan in terms of actual benefits received. These changes are relative to the treatment of newly hired Xerox employees with benefits determined under Section 4.3 of

15

the Plan.  Consider the following example:

> Employee 1 works at Xerox from 1960 to 1970, leaves the company, is rehired in 1980 and continues working at the company until 2005. Employee 2 is newly hired by Xerox in 1980 and continues working at the company until 2005.  The employees have equivalent highest average salaries.

Under the Plan Administrator's approach, Employee 2's RIGP benefit is determined under the RIGP formula, using the highest average salary and 25 years of service. Employee 1's RIGP benefit is determined under the RIGP formula, using the same highest average salary and 35 years of service, and then reduced by the "actuarially equivalent" annuity value of the prior lump-sum distribution.  Employee 1's RIGP benefit will be *less than* Employee 2's benefit.  This reduction changes the risk calculus under the plan, as it affects the comparison of the three components.  In circumstances where the market has not performed well, the rehired employee is therefore less likely to receive the RIGP benefit and bears more of the market risk inherent in defined contribution accounts. *Cf. CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1873 (2011) (holding that a new plan that "shifted the risk of a fall in interest rates from [employer] to its employees" represented a decrease in benefits).  If RIGP is awarded, Employee 1 will also receive *less of a pension* under the Xerox Plan than Employee 2.  If, as Defendants maintain, the offset is the equivalent of Employee 1's "accrued benefit" already received, the offset should not place the employee in a less than equivalent position.

To be clear, ERISA plans may be constructed to change the risk borne by rehired employees or reduce such employees' benefits in a manner that treats them worse than

16

newly hired employees, provided that such terms exist in the plan. They do not exist here. The newly hired employee's benefits are determined under Section 4.3. We fail to see how an offset that purports to calculate "accrued benefits" under that section would treat rehired employees and newly hired employees differently. Sections 4.3(e) and (f) provide interest rates for use in converting CBRA and TRA into annuities, not for determining the accrued benefit under RIGP. No provision in the Xerox Plan defines the offset in accordance with the method the Plan Administrator advocates, and Section 4.3 defines the RIGP "accrued benefit" only with reference to the RIGP formula. Accordingly, we find that the proposed offset produces an absurd and contradictory result and is therefore unreasonable.

**II. Notice**

We now consider, assuming *arguendo* that the Plan Administrator's offset method was a reasonable interpretation of the Xerox Plan, whether the offset violated ERISA's notice requirements and therefore cannot be applied to the Plaintiffs' benefits. The Supreme Court expressly declined to reach this argument, *Conkright*, 130 S. Ct. at 1652 n.2, and, on remand, the district court held that there was no notice violation, *Frommert*, 825 F. Supp. 2d at 444-47. It is an open question whether our analysis of a claimed violation of ERISA's notice requirements, which requires an interpretation of the Xerox Plan's SPDs, is subject to review under a de novo or abuse of discretion standard. *See Layaou*, 238 F.3d at 211-12. We decline to answer that question here because we hold that, under either standard, the Plan violates ERISA's notice provisions.

17

SPDs are central to ERISA. Section 104(b) of ERISA requires plan administrators to regularly furnish SPDs to plan beneficiaries. 29 U.S.C. § 1024. We have recognized "ERISA's purpose of ensuring adequate disclosure with respect to pension and welfare plans." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 580 (2d Cir. 2006). "Where the SPD is silent on a provision that the plan documents include, and plaintiff contends therefore the term cannot apply to him, . . . [we] rely[] on the statutory language of ERISA and its implementing regulations . . . [and] look to see whether ERISA requires the term to be stated in the SPD." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 488 (2d Cir. 2006).[10]

ERISA and its regulations mandate what information administrators must include in an SPD. 29 U.S.C. § 1022 (specifying required information for SPDs); *see also* 29 C.F.R. § 2520.102-2 (specifying requirements for SPD style and formatting); 29 C.F.R. § 2520.102-3 (specifying requirements for SPD contents). SPDs must detail the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," and "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022. "In fulfilling [the statutory notice] requirements, the plan administrator shall exercise considered judgment and discretion by taking into account such factors as

[10] We must also consider whether Plaintiffs meet the applicable standard of harm. *See Tocker*, 470 F.3d at 488 ("Second, we consider whether plaintiff was likely prejudiced by the SPDs' silence on the term or information at issue"). *See infra* Part III.

18

the level of comprehension and education of typical participants in the plan and the complexity of the terms of the plan." 29 C.F.R. § 2520.102-2(a). SPDs must include statements "clearly identifying circumstances which may result in . . . *offset* . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide." *Id.* § 2520.102-3(*l*) (emphasis added). In order to comply with Section 102 of ERISA, an SPD must explain the "full import" of a plan term. *Layaou*, 238 F.3d at 211 (emphasis and citation omitted).

For purposes of our notice analysis, we assume *arguendo* that the Xerox Plan is reasonably interpreted by the Plan Administrator to include the current proposed offset method. Section 9.6 of the Xerox Plan provides that "the accrued benefit of [a beneficiary] based on all Years of Participation shall be offset by the accrued benefit attributable to [any past] distribution." The Plan's SPDs state that "[t]he amount [a beneficiary] receive[s] *may* also be reduced if [the beneficiary] had previously left the Company and received a distribution at that time." Appendix 694 (emphasis added); *see also* Appendix 534. Comparing the Plan and its SPDs, we find that the SPDs fail to clearly identify the circumstances that will result in an offset, are insufficiently accurate and comprehensive, and fail to explain the "full import" of Section 9.6 of the Plan. Accordingly, we hold that the Plan violates ERISA's notice provisions.

We make our holding for several reasons. First and foremost, the SPDs do not state that the amount of the lump-sum distribution *will* reduce the RIGP benefit, stating only that it "may" result in a reduction. This is a critical omission because RIGP is a

19

formula and not an account (like CBRA and TRA). We do not see how a beneficiary would know, given the SPDs' use of the word "may," that a prior distribution from an account would reduce his benefit under a formula unless the SPD made clear the interaction between the two. Thus, *any* interpretation of the Plan that necessarily reduces the RIGP benefit would violate ERISA's notice requirements.

Second and relatedly, even assuming that the SPDs prescribe an offset to RIGP, the SPDs fail to describe the mechanics of any offset. Specifically, the SPDs fail to state the interest rate to be used to make the actuarial equivalence. A higher interest rate would lead to a much larger offset than a lower one, leading to a correspondingly greater reduction of benefits. The SPDs are therefore insufficiently accurate and comprehensive.

Defendants raise several counter-arguments as to why there is no notice violation, each of which is unavailing. First, Defendants argue that finding a notice violation in this case would conflict with our holding in *McCarthy v. Dun & Bradstreet Corporation*, where we declined to "impose[] a blanket requirement under which a[n SPD] invariably must describe the method of calculating an actuarial reduction or must use a clarifying example to illustrate how a benefit is actuarially reduced when a participant who has vested rights to receive a particular plan benefit chooses to receive payments before reaching normal retirement age." 482 F.3d 184, 197 (2d Cir. 2007). We reject this argument and, likewise, decline to make such a blanket rule here. *McCarthy* is distinguishable from the instant case: It did not involve a floor-offset plan with multiple components, and the relevant SPD, with respect to the deferred vested retirement benefits

20

at issue, stated that "the amount of benefit will be reduced actuarially" by an amount greater than 3% to account for an election to receive early payment of those benefits. *McCarthy*, 482 F.3d at 190, 193-94 & nn.1-2. Our conclusion here is limited to the specific components and mechanics of the Xerox plan. It plainly does not create the "blanket requirement" we previously declined to adopt.[11]

Second, Defendants argue that our holding runs the risk of making future SPDs unreadable. While it may be the case that "[l]arding [an SPD] with minutiae would defeat that document's function: to provide a capsule guide in simple language for employees," *Herrmann v. Cencom Cable Assocs.*, 978 F.2d 978, 984 (7th Cir. 1992), we have not demanded the inclusion of such minutiae here. We have not specified *how* to best convey the full import of a retirement plan in an SPD, as ERISA gives the plan administrator discretion in making that judgment. 29 C.F.R. § 2520.102-2(a). That being said, the SPD could have sufficiently explained the Plan Administrator's proposed offset by including a brief statement that the RIGP benefit would be offset by the appreciated value of any prior distribution or by providing an example calculation of benefits that employed the offset. *Id.*; *Layaou*, 238 F.3d at 211. Furthermore, Xerox's 1998 SPD adequately

---

[11] Defendants also rely on the Tenth Circuit's decision in *Stamper v. Total Petroleum, Inc. Retirement Plan*, which held that when an SPD is silent about actuarial assumptions but does not contradict the retirement plan, the plan controls. 188 F.3d 1233, 1243 (10th Cir. 1999). The Tenth Circuit's holding also rested on the fact that plaintiffs "ma[de] no claim that they actually detrimentally relied on the SPD." *Id.* This differs from the instant appeal, in which Plaintiffs claim that they meet the applicable harm standard.

explained the phantom account offset,[12] *Frommert I*, 433 F.3d at 268-69, an alternative approach that is no less complicated than the Plan Administrator's approach here. Xerox could have issued an SPD describing the proposed offset without rendering it unreadable.

Finally, the district court, in its analysis of ERISA's notice requirements on our remand following the Supreme Court's decision in *Conkright*, stated that

> [i]n contrast to the Administrator's proposal, then, plaintiffs' suggestion that this Court should not apply *any* appreciated offset is, in light of the Supreme Court's decision in this case, *un*reasonable. In effect, plaintiffs would have this Court do exactly what it did before, *i.e.*, to adopt an approach under which plaintiffs' "present benefits [would be] reduced only by the nominal amount of their past distributions—thereby treating a dollar distributed to [plaintiffs] in the 1980's as equal in value to a dollar distributed today." The Supreme Court expressly rejected that approach, and I decline to adopt it again.

825 F. Supp. 2d at 447 (citation omitted). With due respect to the district court, this discussion is entirely inapposite to the issue of notice.[13] Determination of the issue of whether statutory notice requirements were violated must look to the terms of the plan—including the Plan Administrator's proposed interpretation—and its SPDs, not Supreme Court dicta about offset appreciation. Having reviewed the Plan and its SPDs, we find that there was not adequate notice in this case.

---

[12] We held the 1998 SPD to be inapplicable to the Plaintiffs here because it was untimely, not because it was insufficiently comprehensive. *See supra* note 4.

[13] The district court implies that the Supreme Court decided the issue of notice on the merits, something that it expressly declined to do. *Conkright*, 130 S. Ct. at 1652 n.2.

## III. Harm and Remedies

We have concluded that the Plan Administrator's offset approach is an unreasonable interpretation of the Xerox Plan and further concluded that the Plan and its related SPDs violate ERISA's notice provisions. We turn now to a consideration of the appropriate remedy. While we remand to the district court to determine the remedy in the first instance, we pause to discuss the parameters that should guide its decisionmaking.

Plaintiffs' notice claims fall under Section 502(a)(3), 29 U.S.C. § 1132(a)(3), under which the district court may invoke its equitable powers. *Amara*, 131 S. Ct. at 1878-80. Because we hold that in the circumstances of this case *any* offset of the RIGP benefit violated ERISA's notice provisions, the district court should first consider equitable remedies. In order to impose an equitable remedy, the district court must consider two questions: (1) what remedy is appropriate; (2) whether Plaintiffs have established the requisite level of harm as a result of the notice violations.

We have previously held that, for claims of ERISA notice violations, plaintiffs need to satisfy a standard of "likely prejudice." *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 113 (2d Cir. 2003). The Supreme Court has since clarified that the standard of harm that plaintiffs must show depends upon the equitable remedy that plaintiffs seek. *See Amara*, 131 S. Ct. at 1881-82. For example, while "detrimental reliance" is a requirement for the remedy of estoppel, it is not a strict requirement for every equitable remedy. *See id.* at 1881. Thus, in considering whether Plaintiffs have made a sufficient showing of harm, the district court must consider this question in tandem with the equitable remedies it may impose. *Id.* at 1871.

23

If the district court holds that the Plan's notice violations justify the imposition of an equitable remedy, such a remedy will provide the relief that Plaintiffs seek.  However, if it finds that no equitable remedy is available, it should separately consider Plaintiffs' unreasonable-interpretation claim, under which the appropriate remedy is to enforce the terms of the Xerox Plan.  29 U.S.C. § 1132(a)(1)(B); *Amara*, 131 S. Ct. at 1876-77.  It should enforce a reasonable interpretation of the Plan, without again considering the issue of notice.  In determining what interpretation of the Plan is reasonable, it should apply the appropriate deference to the interpretation of the Plan Administrator under *Firestone*.

**IV.  Additional Discovery**

Finally, Plaintiffs argue that the district court erred in failing to permit them to conduct discovery concerning whether the Plan Administrator is operating under a conflict of interest.  *See Frommert*, 825 F. Supp. 2d at 447-48.  We review a district court's discovery rulings for abuse of discretion.  *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

Plaintiffs argue that, based on *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), the district court should permit them to conduct additional discovery as to whether the Plan Administrator here is operating under a conflict of interest.  In *Glenn*, which was issued after discovery in this litigation, the Supreme Court held that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of 'conflict of interest'" that "must be weighed as a 'factor in determining whether there is an abuse of discretion'" under *Firestone*.  *Id.* at 111-12 (emphasis

24

omitted) (quoting *Firestone*, 489 U.S. at 115). Plaintiffs' argument that additional discovery is required in light of *Glenn* fails because "the Plan Administrator has at all relevant times been an employee of Xerox, which is ultimately responsible for funding the Plan" (Defendants' brief on appeal at 59), and because the principle that, even where a plan gives the administrator discretion, the administrator's "conflict of interest" would be "a facto[r] in determining whether there is an abuse of discretion," *Firestone*, 489 U.S. at 115 (internal quotation marks omitted), had been established long before *Glenn*. The district court did not abuse its discretion in declining to reopen discovery.

## CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.