*98 GREENAWAY, JR., Circuit Judge,
dissenting.
I. Introduction
In its effort to resolve this matter, the majority comes to an interpretation of the contract at hand that is untenable and yields an unjust result. Thus, I am compelled to respectfully dissent.
First, the Committee’s contract interpretation, which the majority adopts, enables Appellants to give with one hand and take with another, leaving Appellees with no net COLA entitlement. This result is the essence of my disagreement with my colleagues.
Second, the Committee’s contract interpretation is inconsistent with its own employees’ testimony and contradicts its own internal documents. Under the most deferential of standards — which our Goldstein standard is not — the Committee’s contract interpretation does not fall within the realm of reasonableness.
II. The Committee’s Interpretation Leaves Appellees With No Net COLA Entitlement
The majority accepts Appellants’ claim that, when a Pension Plan beneficiary elects to receive his Pension Plan benefit as a lump sum payment, rather than in monthly annuity payments, the Pension Plan beneficiary is entitled to receive a COLA amount in addition to his lump sum payment — but must also then have his Supplemental Plan benefits reduced by an amount equal to the COLA. (See Appellants’ Br. 22 (“Since Pension Plan benefits increased due to the Pension Plan COLA ... Supplemental Plan benefits correspondingly were reduced [by the COLA amount].”).)[1] This interpretation is purportedly mandated to avoid a double payment of the COLA to Appellees; however, in actuality, Appellants seek to give an amount equal to COLA with one set of benefits and to subtract an amount equal to COLA from another set of benefits, resulting in a net zero COLA entitlement for each Appellee.[2] Even according some degree of deference to the Committee’s contract interpretation of Supplemental Plan terms,[3] the Committee’s contract in *99 terpretation here cannot be deemed reasonable.
Appellants argue, and Appellees do not dispute, that Appellees are not eligible for or due any COLA entitlement as an addition or adjunct to their Supplemental Plan benefit. As such, the Supplemental Plan benefit should remain constant both before levying a COLA entitlement with the Pension Plan benefit as well as after. If the result differs, as Appellees suggest, there lies the rub.
An example regarding this calculation may clarify the point.[4] Assume each Ap-pellee is entitled to a $100 Pension Plan benefit and a $5 COLA amount. Assume the Supplemental Plan benefit formula equals (Factor A-Factor B) x Factor C, where Factor C equals one and Factor A equals 200.[5]
The parties do not dispute that, under this example, each Appellee should receive $105 in a Pension Plan lump sum payment ($100 Pension Plan benefit plus a $5 COLA amount). The parties do dispute how to calculate the Supplemental Plan benefit.
Using Appellees’ interpretation, the $5 COLA amount is not added to Factor B. Thus, each Appellee’s Supplemental Plan benefit equals Factor A-Factor B, or $200-$100, which equals $100. Adding this Supplemental Plan benefit of $100 to the Pension Plan Benefit of $105, each Appellee ends up with $205. Hence, the pensioner would have, at the end of the day, a greater benefit after the levying of a Pension Plan COLA entitlement than before. Notably, the Supplemental Plan calculation is the same both before and after disbursing the Pension Plan COLA entitlement.
Using the Committee’s interpretation, on the other hand, the $5 COLA amount is added to Factor B. Thus, each Appellee’s Supplemental Plan benefit equals Factor A-Factor B, or $200-$105, which equals $95. Adding this Supplemental Plan benefit of $95 to the Pension Plan Benefit of $105, Appellee ends up with $200.
Most importantly, under the Committee’s interpretation, each Appellee would take home $200 at the end of the day whether or not there was a COLA entitlement disbursed with the Pension Plan benefit. Put another way, if each Appellee had *100 not received a $5 COLA amount with his Pension Plan benefit, such that the Pension Plan benefit equaled $100 instead of $105, the Supplemental Plan benefit would equal $100 (Factor A-Factor B, or $200-$100), and each Appellee would still receive only $200 from both plans.
Thus, the Committee’s interpretation, in practical terms, appears flawed. Under the example presented above, there would be no reason for Appellees to even ask for a COLA amount with the Pension Plan benefit because — under the Committee’s interpretation — each Appellee would receive the same $200 — in combined Pension Plan and Supplemental Plan benefits— whether or not he had a COLA amount added to his Pension Plan benefit. Why would Appellees contract for such an illusory COLA benefit?[6]
III. The Committee’s Interpretation Is Inconsistent With Its Prior Course of Dealing, The Testimony of Its Own Actuaries and Employees and Its Prior Interpretation of the Supplemental Plan Terms
The parties’ prior course of dealing confirms that before the 2008 COLA Amendment, no COLA amount was ever considered as part of Factor B, and the calculations for Factor A and Factor B under the Supplemental Plan were not dependent upon one’s election under the Pension Plan. (See, e.g., App. 84-35 (District Court opinion indicating that “the defendants acknowledge that the calculation of plaintiffs benefits departed from the longstanding administration of the plans”)); Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 137 (3d Cir.1993) (stating that the “past dealings of contracting parties pursuant to an agreement are probative of the parties’ intent” and “[evidence of a course of conduct is particularly compelling when it occurs over a substantial time period”); James v. Zurich-Am. Ins. Co. of Ill., 203 F.3d 250, 255 (3d Cir.2000) (“[A] basic rule of contract construction is that ‘[a] contract must be interpreted in light of the meaning which the parties have accorded to it as evidenced by their conduct in its performance.’ ” (second alteration in original) (quoting Capitol Bus Co. v. Blue Bird Coach Lines, Inc., 478 F.2d 556, 560 (3d Cir.1973)); In re New Valley Corp., 89 F.3d 143, 150 (3d Cir.1996) (“Extrinsic evidence [which we may consider in interpreting a contract] may include ... the conduct of the parties that reflects their *101 understanding of the contract’s meaning.”).)
William Dorcas, Director of Employee Benefits at Evonik Degussa, confirmed that historically, when a plan participant elected an annuity form of payment from the Pension Plan, there was no “extra adjustment” of the Supplemental Plan benefits to account for the COLA amount received together with the Pension Plan benefit. (App.1781-82.) Now, under the Committee’s new interpretation, when a plan participant elects a lump sum form of payment from the Pension Plan, there will be an adjustment — namely, a reduction— in the Supplemental Plan benefits to account for the COLA amount received together with the Pension Plan benefit. However, the formula set forth in the Supplemental Plan allows for no such distinction — ostensibly because there was no ex ante intent among the contracting parties to treat Supplemental Plan beneficiaries differently based on their elections (of annuity or lump sum payments) under the Pension Plan.[7]
Furthermore, Peter A. Fargo, the company’s actuary until 2006,[8] stated that “it is my opinion that the adjustments made by [Appellants] to the lump sum payable to [Appellees] under the Evonic RohMax USA, Inc. Non-Qualified Pension Plan in the event that [they] elect a lump sum payment from the [ ]Pension Plan is not in accordance with the terms of either the Original Non-Qualified Pension Plan or the Amended Norir-Qualified Pension Plan. ” (See id. at 2027 (emphasis added).) “Specifically, the benefit calculated under Section 6.1(b) of the Amended Non-Qualified Pension Plan is not affected by the election of a lump sum benefit under the Pension Plan....” (Id.)[9]
Moreover, the Committee’s own documentation indicates, as recently as December 2007, that it did not tie the calculation of Supplemental Plan benefits to one’s elections under the Pension Plan. In a Resolution signed by the Committee on *102 December 19, 2007 (the “December 2007 Resolution”), the Committee wrote: “[n]on-qualified [Supplemental] plan benefits are reduced by qualified [Pension] plan benefits, but are not linked to elections under the qualified [Pension] plan.” (App. 1550 (emphasis added).)[10] This language indicates that at least until December 2007, the Committee itself did not believe that the formula set out in Section 7.2.2 of the Supplemental Plan called for treating the calculation of benefits differently depending on one’s elections (to receive a lump sum or monthly annuity payments) under the Pension Plan.
One year later — after certain of Appel-lees’ benefits had already vested and accrued under the Supplemental Plan — the Committee added language to Factor B which states the opposite of the December 2007 Resolution, namely that “the Participant’s Basic Amount of Early Retirement Pension [under the Supplemental Plan] shall reflect the relative value of the Participant’s selected payment form under the Pension Plan.” (App.266.) Despite the fact that this addition constitutes an about-face in the Committee’s interpretation of the Supplemental Plan benefits formula, the Committee steadfastly maintains that the “restated document ... signed in December of 2008 and its predecessor [Supplemental Plan] document are the same in terms of the formula to be applied to calculate the benefit.” (App.1554.) This pronouncement by the Committee is hard to reconcile on this record.
To the contrary, the record reflects that Thomas Ayres, the Committee’s Chairman, explained that the new Supplemental Plan language was added “based on the conflicts that [Appellants] were having at the time in terms of the interpretation of the plan with the plan participants,” ostensibly including Appellees in this case. (App. 1556-57.) And, the testimony of Joseph Sinclair, Evonik RohMax’s Director of Human Resources, also undermines any finding that the contract language supports the Committee’s interpretation. (See App. 1870 (disagreeing with Appellants’ decision to “[o]ffset[ ] the COLA driven increase in the [Pension Plan] benefit with a decrease in the [Supplemental Plan] benefit” because this decision “seems contrary to the intent of the [Supplemental] plan ... [and the] decrease in the nonqualified [Supplemental] benefit in effect diminishes the value of the bonuses.”).)[11] The writing is thus on the wall.[12]
*103 The Committee’s interpretation, which changed in 2008 to provide for linking one’s benefits under the Supplemental Plan to his election under the Pension Plan — and which had the effect of providing a net zero COLA entitlement — is unreasonable given the testimony of Appellants’ own employees, Appellants’ prior course of dealing, and Appellants’ own pri- or interpretations of the contract.[13] Behind the smoke and mirrors — which Appellants seek to erect through reference to complex actuarial calculations — is a bare, ex post attempt to deprive Appellees of the COLA amount to which they are entitled.[14] The majority should not give its imprimatur to such an attempt.
While, as the majority indicates, “[tjhere is nothing unreasonable about one interpretation over the other when the plan is ‘reasonably susceptible’ to either meaning put forth by the parties,” (see Majority Op. 13 (quoting Goldstein v. Johnson & Johnson, 251 F.3d 433, 447 (3d Cir.2001))), in my view the Supplemental Plan language here is not reasonably susceptible to the Committee’s interpretation. To reiterate, the Committee’s interpretation leaves Ap- *104 pellees with no net COLA entitlement, treats Supplemental Plan beneficiaries differently depending on whether they elect to receive Pension Plan benefits in lump sum rather than annuity payments absent any contract language reflecting this differential treatment, and runs contrary to the understandings of Appellants’ employees, Appellants’ prior course of dealing and Appellants’ prior interpretations of Supplemental Plan terms. For the reasons set forth above, I would affirm the District Court’s judgment. Therefore, I dissent.

. (See also App. 1785-86 ("Furthermore, we reduced the present value to ensure that the total value of Mr. Woodruff's Qualified [Pension] and Nonqualified [Supplemental] Plan benefits before the COLA enhancement to the lump sum on the Qualified Plan is retained.”); App.2011 (explaining that a participant "who elects to receive his [Pension] Plan benefit as a lump sum will have his [Supplemental] Plan benefit reduced to ... reflect[ ] the COLA [received by the participant with] the lump sum [he received under] the [Pension] Plan”); App. 1988 (explaining that even after the COLA Amendment takes effect, "the total amount of your retirement benefit [under both the Pension Plan and Supplemental Plan] is unchanged" because the COLA Amendment only "shift[s] ... benefits from the Non-Qualified Plan to the Qualified Plan”).)

. This result is troubling because a COLA is "an essential element of the normal retirement benefit” that "ensures that the retirement benefits will not diminish in real value over time.” Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union, 980 F.2d 465, 468 (7th Cir.1992); see also Williams v. Rohm and Haas Pension Plan, 497 F.3d 710, 711 (7th Cir.2007) (explaining that "COLAs are commonly applied to [retirement benefits] in order to account for inflation”).

.Goldstein does not require that we accord substantial deference to a plan administrator’s interpretation. It requires that we make an independent determination as to reasonableness and good faith based on "[o]rdinary contract principles” and the federal common law of contract. Goldstein v. Johnson & Johnson, 251 F.3d 433, 444 (3d Cir.2001). This is no lax standard, which at least two sister circuits have had occasion to acknowledge. See, e.g., Comrie v. IPSCO, Inc., 636 F.3d 839, 842 (7th Cir.2011) (Easterbrook, J.) (stating that under Goldstein, "interpretations *99 by a non-fiduciary [such as a plan administrator] must be ignored, and that courts must make independent decisions, no matter what a plan’s governing documents say ”) (emphasis added); id. (stating that the standard should be "easier, not harder as Goldstein thought, to honor discretion-conferring clauses in contracts that govern the actions of non-fiduciaries”); Craig v. Pillsbury Non-Qualified Pension Plan, 458 F.3d 748, 752 (8th Cir.2006) (applying the Goldstein standard and finding that the plan administrator’s interpretation was unreasonable); id. (acknowledging that Goldstein does not call for a relaxation of the standard of review from de novo to abuse of discretion and that "de novo review does not ... alter our analysis as much as it might appear at first blush").
In Goldstein, we stated that “[i]t is axiomatic that we defer to a district court’s credibility determinations.” Goldstein, 251 F.3d at 436, 445 (emphasis added). In this case, the District Court combed through the record and made credibility determinations — to which we must defer — that were adverse to Appellants. The majority does not give deference to the District Court’s adverse credibility determinations, which Goldstein requires. On the other hand, the majority gives substantial deference to the Committee’s interpretation, which Goldstein neither requires nor endorses.

. The numbers used for the example above are not meant to be proportional to the actual numbers in this case, but are used for illustrative purposes.

. Section 7.2.2 of the Supplemental Plan states: "The Basic Amount of Early Retirement Pension of a Participant who retires ■ from the Company ... on or after age 60 shall be one-twelfth of (A-B) x C.” (App.229.)

. The actual numbers involved in this case comport with the example used here. Taking Appellee Zebrowski as an example, the Committee indicated, by letter dated May 6, 2009, that Appellee Zebrowski was entitled to $1,774,428 in combined benefits under both the Pension Plan and Supplemental Plan. However, if he were to collect the $461,775 COLA entitlement with his Pension Plan benefit, he must "repay tire Supplemental Plan $461,775.” (See App.1992-97; id. at 1996 ("If you receive an additional lump sum payment from the Pension Plan of $461,775 [to account for your Pension Plan COLA entitlement], you must repay the Supplemental Plan $461,775.”); id. at 1988 (stating that “[d]ue to the COLA Amendment, your Qualified Plan lump sum benefit ... is increased by $461,774.88,” which has the effect of "shifting] a portion ($461,774.88) of your total retirement benefit from the Non-Qualified to the Qualified Plan, such that "your total retirement benefit under the Qualified Plan and Non-Qualified Plan is not chang[ed]”).) Again, the Committee’s requirement that Appellee Zebrowski (and each of the other Appellees), receive a COLA entitlement under the Pension Plan in exchange for a reduction of his Supplemental Plan benefit in an amount equal to the COLA entitlement, leaves Appellee Zebrowski (and each of the other Appellees) with a net zero COLA entitlement. Moreover, there is no perceived or actual benefit to Appellees as a result of the COLA Amendment under this scenario.

. This point is separate from (though related to) the issue of whether Factor B includes a COLA. The point here is that, if it were always the parties’ intent to treat different beneficiaries under the same Supplemental Plan differently based on whether or not they chose to receive Pension Plan payments via a lump sum rather than annuity payments, the Supplemental Plan contract language should reflect that differential treatment. The absence of any contract language speaking to this differential treatment supports a finding that the Committee’s interpretation is unreasonable.

. Contrary to the majority’s contention, (see Majority Op. 95 n. 11), Fargo’s testimony is relevant, even though he was not working for Appellants at the time that the COLA Amendment was implemented. Fargo was familiar with the 1999 Supplemental Plan terms from having administered and interpreted that plan while working for Appellants. Therefore, his testimony indicating that Appellants’ new contract interpretation is inconsistent with the Supplemental Plan terms — with which he was intimately familiar from his prior period of employment with Appellants — is relevant. Additionally, the actuary employed by Appellants after Fargo, Blake Baietto, also gave testimony that supports Appellees’ position. Baietto indicated that while he “had never done it that way in the past," he received guidance from the Committee and Appellants' lawyers to change his calculation methodology to include a COLA amount in the calculation of Factor B, which had the effect of awarding a COLA amount with Pension Plan benefits and subtracting an amount equal to the COLA from Supplemental Plan benefits. (App. 1708-09 (emphasis added).) Baietto, however, was not able to point to any language from the 1999 Supplemental Plan that supported this new interpretation and methodological change. (Id. at 1714-15.)

.(See also id. at 2025-26) ("[T]he value of the lump sum payment under the Original [Supplemental] Pension Plan is not contingent upon the form of payment [chosen] under the Pension Plan.” (emphasis added).)

.The first part of the December 2007 Resolution’s statement that "[n]on-qualified [Supplemental] plan benefits are reduced by qualified [Pension] plan benefits” does not support Appellants’ position, notwithstanding the majority’s pronouncement to the contrary. Essentially, this stands for the uncontroversial proposition — which neither party disputes— that Supplemental Plan benefits are reduced by some measure of Pension Plan benefits (though the parties do dispute which numbers to include in calculating that measure of Pension Plan benefits). The controversial part of the December 2007 Resolution statement that this dissent seeks to emphasize is the second half, which claims that Supplemental Plan benefit amounts "are not linked to elections under the qualified [Pension] plan.” (App. 1550.) It is plain from the record that, notwithstanding the December 2007 Resolution’s pronouncement, Appellants did begin to link Supplemental Plan benefits to elections under the Pension Plan. (See, e.g., App. 1699-1701 (Blake Baietto, Appellants’ actuary, indicating that despite the December 2007 Resolution, Appellee Woodruff's Supplemental Plan benefit was linked to Woodruff’s election of a lump sum rather than annuity payments under the Pension Plan).)

. Furthermore, at oral argument, Appellants conceded that their revised Supplemental Plan language constituted a "math change” in prior Committee interpretations of the Supplemental Plan benefits calculation.

. The majority argues that Appellants did not "arbitrarily decide[] in 2008 to change their Supplemental Plan calculations” but *103 changed their interpretation because of "the attendant change in the law — i.e., the Williams decision.” (Majority Op. at 95) (“Accordingly, the “Committee's interpretation of how the Supplemental Plan benefits were to be calculated ... was based on the Pension Plan amendment, prompted by Williams ...” (emphasis added).) Reliance on Williams to justify the Committee’s interpretation is troubling for several reasons. First, the Williams decision applied only to Pension Plan benefits and did not affect the law relating to Supplemental Plan benefits. Second, Williams constituted non-binding out-of-circuit precedent, which Appellants were not compelled to follow but voluntarily chose to follow. Third, the Committee’s interpretative change disrupted the parties’ ex ante intentions, which had been reinforced by the parties’ course of dealing in prior years. (App. 34 (District Court opinion indicating that “the actions of the contracting parties were consistent with a mutual intention that pension plan COLAs would be paid once under the pension plan and would not be used to reduce benefits paid under the top hat plan”).)

. See, e.g., Goldstein, 251 F.3d at 436 (stating that where, as here, a top hat plan "grant[s] the plan administrator discretion to construe the terms of the plan,” that discretion is "subject to the implied duty of good faith and fair dealing” embodied in ordinary contract principles) (citing Restatement (Second) of Contracts § 205); Restatement (Second) of Contracts § 205 cmt. e; (stating that the duty of good faith is "violated by dishonest conduct such as ... asserting an interpretation contrary to one's own understanding”); id. at cmt. d (stating that while a "complete cata-logue of types of bad faith is impossible ... the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain ... [and] abuse of a power to specify terms”); cf. Frommert v. Conkright, 738 F.3d 522, 531 (2d Cir.2013) (stating that "the [plan administrator's] proposed offset produces an absurd ... result and is therefore unreasonable”).

. It seems that Appellants were confounded by the thought of having to pay a COLA amount together with a lump sum Pension Plan benefit, pursuant to the 2008 COLA Amendment. To this point, Appellants admitted in a letter to Pension Plan participants that ”[t]he financial impact of applying the COLA to lump sum payments is significant and well beyond the value of the pension benefit as originally intended.” (App.1970 (Pension Plan COLA Amendment Notice, Nov. 7, 2008).) By calculating Supplemental Plan benefits pursuant to the Committee’s interpretation, however, Appellants are able to give with the left hand and take with the right, such that the economic loss that they would otherwise have suffered as a result of paying out COLAs together with lump sum Pension Plan benefits is entirely mitigated. (See, e.g., App. 1716-17 (Appellants’ actuary Blake Baietto stated that "Evonik and its counsel made the decision that the size of the pie, if you will, stays the same ... [s]o if there is more benefit coming from the qualified [Pension] plan, that must be reflected in the determination of the nonqualified [Supplemental] plan” benefit).)