17-1826-cv (L)
*Testa v. Becker*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2017

(Argued: May 22, 2018          Decided: December 12, 2018)

Nos. 17-1826-cv, 17-1985-cv

_____

ROBERT TESTA, an individual,

*Plaintiff-Appellee-Cross-Appellant,*

-v.-

LAWRENCE BECKER, as plan administrator of the Xerox Corporation Retirement Income Guarantee Plan, XEROX CORPORATION RETIREMENT INCOME GUARANTEE PLAN, an Employee Pension Benefit Plan,

*Defendants-Appellants-Cross-Appellees.*
_____

Before:      PARKER, LIVINGSTON, CHIN, *Circuit Judges*.

In 1998, Defendant-Appellant-Cross-Appellee Xerox Corporation Retirement Income Guarantee Plan ("Xerox Plan") issued a Summary Plan Description explaining that it would calculate plan participants' benefits using the so-called "phantom account offset" method. In 2006, we held in *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006), that Defendant-Appellant-Cross-Appellee Lawrence Becker ("Becker") could not use the phantom account offset when calculating benefits for a group of over one hundred plan participants who were hired before 1998. Three years later, Plaintiff-Appellee-Cross-Appellant Robert

Testa ("Testa"), who was hired before 1998, learned that Becker had applied the phantom account offset to him. Testa sued Becker under ERISA for denial of benefits and breach of fiduciary duty, alleging that Testa had defied our decision in *Frommert*. The United States District Court for the Western District of New York (Larimer, *J.*) dismissed Testa's denial-of-benefits claim as untimely but granted Testa summary judgment on his fiduciary-duty claim. Becker appealed the latter; Testa cross-appealed the former. We conclude that Testa's denial-of-benefits claim is untimely, and that Becker, not Testa, was entitled to summary judgment on the fiduciary-duty claim. Accordingly, the judgment of the district court is AFFIRMED in part, REVERSED in part, and the case is REMANDED with directions to enter judgment for Becker and the Xerox Plan.

|  |  |
|---|---|
| FOR ROBERT TESTA: | SHAUN P. MARTIN, University of San Diego School of Law (Amber Ziegler, John A. Strain, Law Offices of John A. Strain, Manhattan Beach, CA, *on the brief*), San Diego, CA. |
| FOR LAWRENCE BECKER, XEROX CORPORATION RETIREMENT INCOME GUARANTEE PLAN: | NOAH LIPSCHULTZ (Margaret A. Clemens, Pamela S.C. Reynolds, *on the brief*), Littler Mendelson, P.C., Fairport, NY. |

DEBRA ANN LIVINGSTON, *Circuit Judge*:

This case presents two questions concerning the Employee Retirement Income Security Act ("ERISA"):

- whether a litigant may bring a denial-of-benefits claim under ERISA when the limitations period is six years and his claim accrued twelve years before he sued; and

- whether *Frommert v. Conkright* ("*Frommert I*"), 433 F.3d 254 (2d Cir. 2006), ordered Defendant-Appellant-Cross-Appellee Lawrence Becker

("Becker") not to apply the so-called "phantom account offset" to plan participants who did not bring timely denial-of-benefits claims.

The answer to both questions is no. We therefore AFFIRM in part and VACATE in part the judgment below and REMAND the case to the district court for further proceedings consistent with this opinion.

## BACKGROUND

### I. Factual Background[1]

Becker administers the Xerox Corporation Retirement Income Guarantee Plan ("Xerox Plan"). This case concerns the method by which Becker calculates benefits for employees who left Xerox, then later returned to Xerox, and then later retired (the "rehired employees"). When they initially left Xerox, these rehired employees typically received a lump sum payment equal to the total value of their then-accrued pension benefit. Consequently, when these rehired employees ultimately retired, their final pension benefits were reduced by the lump sum that they had previously received upon their initial departure. During the period at issue in this case, however, Becker offset more than just this lump sum.[2] He also

---

[1] The facts presented below are, unless otherwise noted, undisputed facts derived from the parties' submissions at summary judgment.

[2] Throughout this opinion, we refer to the Defendants-Appellants-Cross-Appellees collectively as "Becker."

3

deducted from the rehired employees' benefits an additional sum approximating the interest that the previous disbursement would have earned had it remained in the pension plan. This hypothetical interest deduction has come to be known as the "phantom account offset."

In 1999, a group of more than one hundred plan participants sued the Xerox Plan, alleging that the terms of the Xerox Plan did not allow it to apply the phantom account offset. They argued that the phantom account offset violated ERISA's anti-cutback rule, which provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." ERISA § 204(g)(1), 29 U.S.C. § 1054(g)(1). The plaintiffs sued for denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and they sought an injunction prohibiting the Xerox Plan from using the phantom account offset under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (creating a cause of action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . obtain other appropriate equitable relief"). In *Frommert I*, we held for the plaintiffs. *See* 433 F.3d at 256–57.

We concluded that the Xerox Plan "attempted to implement the phantom account offset without properly amending the terms of the Plan or providing

4

adequate notice to rehired employees." *Id.* at 262. The phantom account offset was eventually "added by amendment of the Plan's text" when the Xerox Plan issued its 1998 Summary Plan Description ("SPD"), which explained the mechanics of the phantom account offset in full. *Id.* at 263. We said that for this reason, "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD." *Id.* We then permitted the plaintiffs to recover on their denial-of-benefits claim under ERISA § 502(a)(1)(B). *Id.* at 270. But we declined to issue "a judgment declaring that the phantom account is prohibited by ERISA and enjoining its application in calculating the benefits of any Plan participants." *Id.* at 269; *see also id.* (commenting that "such sweeping relief [was] not warranted"). Beyond ruling out broad equitable and declaratory relief, *Frommert I* did not decide on the plaintiffs' appropriate remedy. The *Frommert* parties have been litigating this issue ever since. *See, e.g.*, *Frommert v. Conkright* ("*Frommert II*"), 535 F.3d 111 (2d Cir. 2008), *rev'd and remanded*, 559 U.S. 506 (2010); *Frommert v. Conkright* ("*Frommert III*"), 738 F.3d 522 (2d Cir. 2013).[3]

---

[3] After we decided *Frommert I*, the Ninth Circuit also held that ERISA did not permit the application of the phantom account offset, though for different reasons. *See Miller v. Xerox Corp. Ret. Income Guarantee Plan*, 464 F.3d 871, 876 (9th Cir. 2006).

5

After we decided *Frommert I*, Becker continued to apply the phantom account offset to some rehired employees who were not parties to the *Frommert* litigation. This spawned a new batch of rehired employee litigation—including this case. Plaintiff-Appellee-Cross-Appellant Robert Testa ("Testa") began working at Xerox in 1972. He left Xerox in 1983, taking a lump-sum distribution of roughly $30,000 from the Xerox Plan. He was rehired in 1985 and retired in 2008. When Testa retired, Becker applied the phantom account offset in his calculation of Testa's pension benefits. In January 2009, Testa received a "pension calculation statement" that informed Testa of the amount of benefits he would receive pursuant to the phantom account offset calculation.

## II. Procedural History

After contesting Becker's calculation of his benefits in two 2009 letters, Testa sued Becker and the Xerox Plan in January in the United States District Court for the Central District of California. As relevant here, he alleged two principal claims for relief: denial of benefits under ERISA § 502(a)(1)(B) and breach of fiduciary duty under § 502(a)(3), *see Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001) (holding that plan participants may bring fiduciary-duty claims under ERISA § 502(a)(3)). His denial-of-benefits claim was virtually

identical to that of the *Frommert* plaintiffs: the phantom account offset impermissibly reduced his pension benefits. Testa then argued that it was a breach of fiduciary duty for Becker to continue to apply the phantom account offset in light of this Court's decision in *Frommert I*.[4]

The case was transferred to the United States District Court for the Western District of New York (Larimer, *J.*) in April 2010. Becker then moved to dismiss both claims. On October 30, 2013, the district court granted Becker's motion in part, dismissing Testa's denial-of-benefits claim on timeliness grounds. *Testa v. Becker*, 979 F. Supp. 2d 379, 383–84 (W.D.N.Y. 2013). The court first concluded that Testa's denial-of-benefits claim became untimely in 2004 because *Frommert I* held that the Xerox Plan had incorporated the phantom account offset in 1998, and the statute of limitations for a denial-of-benefits claim in New York is six years. *Id.* at 383. But the court did not dismiss Testa's fiduciary-duty claim. Testa had argued that Becker had a fiduciary duty to comply with the Second Circuit's

---

[4] Because he filed his complaint in California, Testa initially alleged that Becker was enforcing the phantom account offset in violation of the Ninth Circuit's decision in *Miller*. After the case was transferred to New York, Testa began to argue that Becker defied both *Miller* and *Frommert I*. On appeal, he has dropped all reference to *Miller* in his fiduciary-duty arguments and instead relies principally on *Frommert I*. We therefore focus our fiduciary-duty discussion on *Frommert I*, rather than *Miller*. *See, e.g., Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

decision in *Frommert I*, which, he maintained, held that "the phantom account may not be applied to employees"—like Testa—"rehired prior to the issuance of the 1998 SPD."   433 F.3d at 263.   The district court concluded that this claim was not untimely because the statute of limitations began running only when Becker's decision to ignore *Frommert I* "became known to" Testa, "presumably" January 2009 or earlier.   *Testa*, 979 F. Supp. 2d at 384.

At the end of discovery, both parties moved for summary judgment.   On May 9, 2017, the district court held for Testa.   *See Testa v. Becker*, No. 10-CV-6229L, 2017 WL 1857384 (W.D.N.Y. May 9, 2017).   Becker had maintained that it was not a breach of fiduciary duty for him to continue to apply the phantom account offset to Testa because Testa could no longer bring a timely denial-of-benefits claim, as the court recognized in its October 30, 2013 decision.   The district court rejected this argument, concluding that *Frommert I* directed Becker not to apply the phantom account offset to any employees rehired before 1998.   Citing *Frommert I*'s apparent mandate, the court concluded that Testa was entitled to summary judgment on his fiduciary-duty claim.

The district court entered final judgment on May 10, 2017.   Becker appealed the district court's May 9, 2017 decision granting summary judgment to

8

Testa, and Testa cross-appealed the district court's October 30, 2013 dismissal of his denial-of-benefits claim.[5]

**DISCUSSION**

**I**

We begin our analysis with Testa's challenge to the district court's dismissal of his denial-of-benefits claim on timeliness grounds.   We review *de novo* a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor.   *See, e.g., O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018).   To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *See, e.g., id.*

Testa first challenges the district court's dismissal of his denial-of-benefits claim on timeliness grounds.   ERISA does not specify a limitations period for denial-of-benefits claims, so we apply "the most nearly analogous state limitations

---

[5] Becker also appealed the district court's October 30, 2013 denial of his motion to dismiss Testa's fiduciary-duty claim, but he does not contest the court's timeliness analysis for this claim in his opening brief.   He has therefore forfeited this challenge. *See, e.g., McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005).

9

statute." *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam) (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)). "New York's six-year limitations period for contract actions, N.Y. C.P.L.R. 213, applies" here, "as it is most analogous" to ERISA denial-of-benefits claims. *Id.* An ERISA denial-of-benefits claim ordinarily accrues "when a plan denies a beneficiary's formal application for benefits," but it may also accrue "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff — regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47, 49 (2d Cir. 1999). Testa does not contest any of this. This first issue therefore turns on when Becker clearly repudiated Testa's benefits.

The district court held that Becker clearly repudiated Testa's claimed pension benefits in 1998 when he updated the SPD to state clearly that the phantom account offset would be used for all employees. *See Testa*, 979 F. Supp. 2d at 383–84. We agree. SPDs play a "central role . . . in communicating the terms of a plan to its members." *Frommert I*, 433 F.3d at 265. For this reason, courts in this Circuit have routinely held that SPDs may constitute clear

10

repudiations of benefits.[6]   And most importantly, we held in *Frommert I* that Xerox's 1998 SPD clearly explained that the phantom account offset would be applied to all rehired employees participating in the Xerox Plan.   *See* 433 F.3d at 260 ("As the plaintiffs concede, the details of the phantom account offset functions were set out in full in the 1998 Summary Plan Description . . . .").   That is why the *Frommert I* plaintiffs knew to challenge the phantom account offset after the 1998 SPD's publication.   Accordingly, Testa's denial-of-benefits claim became untimely in 2004.

Testa does not contest that an SPD can amount to a clear repudiation of benefits.   Instead, he argues that the 1998 SPD did not meet this bar, notwithstanding our holding in *Frommert I*.   Testa makes four principal arguments in support of his position.   All four are unavailing.

First, Testa maintains that "Defendants repeatedly said that they would not apply the phantom account to *anyone*, including Testa, if they ultimately lost *Frommert* (which they did)."   Testa Br. 18; *see also id.* at 29 (accusing Becker of

---

[6] *See Hirt v. Equitable Ret. Plan for Emps., Managers & Agents*, 285 F. App'x 802, 804 (2d Cir. 2008) (summary order); *Anderson v. Xerox Corp.*, 29 F. Supp. 3d 323, 331 (W.D.N.Y. 2014), *aff'd on other grounds*, 614 F. App'x 38 (2d Cir. 2015) (summary order); *Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 595–96 (S.D.N.Y. 2009).

11

making "ongoing misrepresentations" about whether the phantom account offset would be applied to Testa). In his view, these misleading statements by Becker both illustrate that the 1998 SPD was not unambiguous and judicially estop Becker and the Xerox Plan from asserting a timeliness defense. We apply judicial estoppel when "a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (quoting *Stichting v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005)).

But the only "misrepresentation" that Testa identifies is a single sentence from a 2014 memorandum in *Kunsman v. Conkright*, in which, Testa argues, Becker admitted that "[t]he decision reached in *Frommert* . . . will, as a matter of law, be applicable to" everyone rehired before 1998. Defs. Mem. in Opp'n at 16, *Kunsman v. Conkright*, No. 08-CV-6080 (W.D.N.Y. July 7, 2017). Testa has quoted Becker out of context. That memorandum repeatedly makes the same argument that Becker does in this case: that *Frommert I* permits him to apply the phantom account offset to rehired employees whose claims are untimely. *See, e.g., id.* at 13 (opposing certification because "there are statute of limitations defenses that will apply to individual plaintiffs"). Moreover, Becker made this statement sixteen

12

years after the Xerox Plan issued the 1998 SPD, ten years after Testa's claim went stale, and four years after Testa sued. Becker's *Kunsman* brief thus has no bearing on whether the 1998 SPD was ambiguous. Nor could this brief have been "to the prejudice of" Testa, *Uzdavines*, 418 F.3d at 147, as his claims became untimely ten years before Becker filed it. We therefore stand by our decision in *Frommert I* that the 1998 SPD unambiguously repudiated Testa's benefits and reject Testa's judicial estoppel argument.

Second, Testa contends that when the 1998 SPD was issued, Becker failed to disclose that he would refuse to comply with our decision in the *Frommert* litigation. This is beside the point: even if Becker had failed to comply with *Frommert I*, this would not make the 1998 SPD any less of a clear repudiation of benefits. We also note that Testa's premise here is faulty because, as we explain below, Becker has not failed to comply with *Frommert I*.

Third, Testa argues that it was illegal for Becker to apply the phantom account offset to Testa after the plaintiffs won in *Frommert I* because ERISA plans must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). Yet the plaintiffs in *Frommert* are not "similarly situated" to Testa: they sued before their limitations periods expired. Testa did

13

not.   As a result, this rule does not bar Becker from applying the phantom account offset to Testa or others like him.

Finally, Testa maintains that his denial-of-benefits claim has been equitably tolled ever since 1999, when the *Frommert* plaintiffs sued.   All ERISA denial-of-benefits claims, in his view, are "akin to . . . putative class action[s]" because "Defendants were under a duty to apply any remedy granted in the pending *Frommert* action to all Plan participants."   Testa Br. 36.   Therefore, he argues, his claims should be equitably tolled because the Supreme Court's original "rationale" for equitable tolling in *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), "is equally applicable to participant ERISA actions," Testa Br. 37.

This is a radical argument: no court to our knowledge has ever held that equitable tolling applies *in every single* ERISA denial-of-benefits action.   We will not be the first.   *Cf. Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 115 (2013) (declining to toll an ERISA claim because the plan did not allow for it).   But even if equitable tolling did apply, Testa would almost certainly not qualify for it. Litigants may benefit from equitable tolling only if they were "diligent in pursuit of their claims."   *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018).   Testa was not "diligent" in any sense of the word: he sat on his rights from 1998 to 2010.

In sum, the 1998 SPD was a clear repudiation of benefits that started the six-year limitations period. Testa's denial-of-benefits claim thus became untimely in 2004. We disagree with all of Testa's arguments to the contrary, and we therefore AFFIRM the district court's October 30, 2013 dismissal of Testa's denial-of-benefits claim.

## II

Becker challenges the district court's May 9, 2017 decision granting summary judgment to Testa and denying Becker's cross-motion for summary judgment. "We review *de novo* the award of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences and resolving all ambiguities in its favor." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (internal citations, quotation marks, and brackets omitted). "Summary judgment is appropriate only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

Testa's fiduciary-duty claim is straightforward: "Defendants breached their fiduciary duties by not complying with this Court's decision in *Frommert I*." Testa Br. 30; *see also, e.g., id.* at 31 ("Testa asserted a valid cause of action for breach

of fiduciary duty based upon Defendants' refusal to follow" *Frommert I*). Becker argues that he, not Testa, was entitled to summary judgment on this claim. In his view, *Frommert I* did not order Becker to stop applying the phantom account offset to plan participants who were not parties to the *Frommert* litigation. We agree with Becker.

*Frommert I* did not order Becker to stop applying the phantom account offset to every single rehired employee who was hired before 1998. Testa's argument to the contrary turns on one clause in *Frommert I*: "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD." 433 F.3d at 263. Becker contended below that this sentence was dictum. The district court rejected this argument, observing that this sentence "seems like a clear directive." *Testa*, 2017 WL 1857384, at *5. We agree with the district court that this sentence is mandatory in tone, but that is not the end of our inquiry. To ascertain *Frommert I*'s true holding, we must read the sentence in context. *See* Bryan A. Garner *et al.*, *The Law of Judicial Precedent* 58 (2016); *see also, e.g., Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821) ("[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.").

16

Read in context, *Frommert I* did not direct Becker to stop applying the phantom account offset to every single employee rehired before the 1998 SPD was issued. *Frommert I* stated that "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD" when holding that the plaintiffs should win on their *individual* denial-of-benefits claims. 433 F.3d at 263. But *Frommert I* declined to issue "a judgment declaring that the phantom account is prohibited by ERISA and enjoining its application in calculating the benefits of any Plan participants," even though the plaintiffs had requested that remedy. *Id.* at 269–70; *see also id.* at 269 (commenting that "such sweeping relief [was] not warranted"). Indeed, *Frommert I* did not order any remedy at all. It remanded the case to the district court to craft one, and the plaintiffs then asked for *individual* relief. *See Frommert v. Becker*, 153 F. Supp. 3d 599, 616 (W.D.N.Y. 2016) ("[D]efendants are hereby directed to recalculate and pay *plaintiffs'* retirement benefits . . . ." (emphasis added)). Indeed, the *Frommert* plaintiffs seemingly never sought any additional equitable relief or to "make [their case] a class action." *See Frommert v. Conkright*, 472 F. Supp. 2d 452, 465 & n.8 (W.D.N.Y. 2007). *Frommert I* thus expressly declined to issue an order that would benefit Testa.

17

At the very least, *Frommert I* did not foreclose Becker from raising legitimate affirmative defenses against rehired employees. We held as much in *Frommert II*. There, we concluded that the phantom account offset could be applied to Xerox Plan participants who had waived their rights to bring ERISA claims, notwithstanding *Frommert I*. *See Frommert II*, 535 F.3d at 122; *see also Anderson v. Xerox Corp.*, 614 F. App'x 38, 39 (2d Cir. 2015) (summary order) (enforcing ERISA waivers against plaintiffs challenging phantom account offsets). Timeliness is as good a defense as waiver. Consequently, if Becker could apply the phantom account offset to plan participants who waived their ERISA rights in *Frommert II*, he can also apply it to participants who cannot bring timely claims.

Both Testa and the district court respond, without further explanation, that there is a distinction between applying the phantom account offset to plan participants who waived their rights and applying it to those who slept on them. We disagree. Timeliness serves "several important policies, including rapid resolution of disputes, repose . . . , and avoidance of litigation involving lost evidence or distorted testimony of witnesses." *Carey*, 201 F.3d at 47. None of those considerations were present in *Frommert I*. And all of them suggest the importance of a legitimate affirmative defense that—like the waivers at issue in

*Frommert II*—Becker was entitled to raise here. Finally, to the extent that Testa seeks to circumvent that defense by litigating under a fiduciary-duty theory, we conclude that his fiduciary-duty claim is no more than his untimely denial-of-benefits claim under another name. Permitting him to recover simply because he recharacterized his original argument "would render the [denial-of-benefits] limitation period a limit in name only." *Id.* at 49.

One might argue that an ERISA plan fiduciary reading the *Frommert I* sentence at issue should have decided to stop applying the phantom account offset to Testa and employees like him, even if *Frommert I* did not technically order it. But that ignores the complex considerations that these fiduciaries face. ERISA's fiduciary provision does "not necessarily favor payment over nonpayment"; to the contrary, fiduciaries have an obligation "to preserve assets to satisfy future, as well as present, claims." *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996). Furthermore, penalizing Becker for not trawling through *Frommert I* for sentences that future litigants might quote out of context would make it difficult for plan administrators to judge the scope of potential liability. *See also Conkright*, 559 U.S. at 517 (stressing that ERISA was meant to "assur[e] a *predictable* set of liabilities" (emphasis added) (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379

19

(2002))). That in turn would imperil their ability to properly invest and grow resources for the benefits of *all* plan participants.

As such, Becker did not breach his fiduciary duty by applying the phantom account offset to Testa, and Becker, not Testa, was entitled to summary judgment. We therefore REVERSE the district court's May 9, 2017 grant of summary judgment to Testa.

## CONCLUSION

For all these reasons, the judgment below is **AFFIRMED** in part, **REVERSED** in part, and the case is **REMANDED** with directions to enter judgment for Becker and the Xerox Plan.