17-114-cv(L)
Frommert v. Conkright

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2017

(Argued: April 18, 2018   Decided: January 14, 2019 )

Docket Nos. 17-114-cv(L), 17-738-cv(CON)

———————————————————

PAUL J. FROMMERT, DONALD S. FOOTE, THOMAS I. BARNES, RONALD J. CAMPBELL, FRANK D. COMMESSO, WILLIAM F. COONS, JAMES D. GAGNIER, BRIAN L. GAITA, WILLIAM J. LADUE, GERALD A. LEONARDO, JR., FRANK MAWDESLEY, HAROLD S. MITCHELL, WALTER J. PETROFF, RICHARD C. SPRING, PATRICIA M. JOHNSON, F. PATRICIA M. TOBIN, NANCY A. REVELLA, ANATOLI G. PUSCHKIN, WILLIAM R. PLUMMER, MICHAEL J. MCCOY, ALAN H. CLAIR, LARRY J. GALLAGHER, NAPOLEON B. BARBOSA, ALEXANDRA SPEARMAN HARRICK, JANIS A. EDELMAN, PATRICIA H. JOHNSTON, KENNETH P. PARNETT, JOYCE D. CATHCART, FLOYD SWAIM, JULIE A. MCMILLIAN, DENNIS E. BAINES, RUBY JEAN MURPHY, MATTHEW D. ALFIERI, IRSHAD QURESHI, RICHARD C. CRATER, GAIL J. LEVY, JOHN A. WILLIAMS, CRYSTAL THORTON, CHARLES R. DRANNBAUER, WILLIAM M. BURRITT, JANICE ROSS HEILER, JOSEPH MCNEIL, THOMAS F. MCGEE, VINCENT G. JOHNSON, F. COLT HITCHCOCK, RONNIE TABAK, MARTHA LEE TAYLOR, KATHY FAY THOMPSON, MARY BETH ALLEN, CRAIG SPENCER, LINDA S. BOURQUE, THOMAS MICHAEL VASTA, FRANK C. DARLING, CLARK C. DINGMAN, CAROL E. GANNON, JOSEPH E. WRIGHT, DAVID M. ROHAN, DAVID B. RUDDOCK, CHARLES HOBBS, CHARLES ZABINSKI, CHARLES J. MADDALOZZO, JOYCE M. PRUETT, WILLIAM A. CRAVEN, MAUREEN A. LOUGHLIN JONES, KENNETH W. PIETROWSKI, BONNIE COHEN, LAWRENCE R. HOLLAND, GAIL A. NASMAN, STEVEN D. BARLEY, DONNA S. LIPARI, ANDREW C. MATTELIANO, MICHAEL HORROCKS, CANDICE J. WHITE, KATHLEEN E. HUNTER, JOHN L. CRISAFULLI,

DEBORAH J. DAVIS, BRENDA H. MCCONNELL, KATHLEEN A. BOWEN, ROBERT P. CARANDDO, TERENCE J. KURTZ, WILLIAM J. CHESLOCK, THOMAS E. DALTON, LYNN BARNSDALE, BRUCE D. CRAIG, GARY P. HARDIN, CLAUDETTE M. LONG, DALE PLATTETER, MARY ANN SERGEANT, MOLLY WHITE KEHOE, DAVID K. YOUNG, LESLIE ANN WUNSCH, RICHARD J. GLIKIN, EUGENE H. UPDYKE, MICHAEL R. BENSON, ALVIN M. ADAMS, RONNIE KOLNIAK, JAMES J. FARRELL, ROBERT L. BRACKHAHN, BENJAMIN C. ROTH, CARMEN J. SOFIA, KATHLEEN W. LEVEA, FREDERICK SCACCHITTI, PAUL DEFINA, JAMES G. WALLS,

*Plaintiffs-Appellants*,

v.

SALLY L. CONKRIGHT, XEROX CORPORATION PENSION PLAN ADMINISTRATOR, PATRICIA M. NAZEMENTZ, XEROX CORPORATION PENSION PLAN ADMINISTRATOR, XEROX CORPORATION, LAWRENCE M. BECKER, XEROX CORPORATION PLAN ADMINISTRATOR, XEROX CORPORATION RETIREMENT INCOME GUARANTEE PLAN, LAWRENCE BECKER, XEROX CORPORATION PLAN ADMINISTRATORS,

*Defendants-Appellees*.

_____

Before:

KEARSE, CABRANES, and LOHIER, *Circuit Judges*.

The plaintiffs, a group of current and former employees of Xerox Corporation, appeal the decisions of the United States District Court for the Western District of New York (Larimer, J.) ordering the defendants, Xerox and various parties tied to its retirement plan, to recalculate the plaintiffs' retirement benefits as a matter of equitable reformation and to pay

prejudgment interest at the federal prime rate. The plaintiffs argue that both awards are inadequate. We **AFFIRM**.

ELIZABETH R. BRANNEN (Peter K. Stris, Brendan S. Maher, *on the brief*), Stris & Maher LLP, Los Angeles, CA; Shaun P. Martin, University of San Diego School of Law, San Diego, CA, *for Plaintiffs-Appellants*.

MARGARET A. CLEMENS (Pamela S.C. Reynolds, *on the brief*), Littler Mendelson, P.C., Fairport, NY, *for Defendants-Appellees*.

LOHIER, *Circuit Judge*:

The principal issue in this appeal is whether the United States District Court for the Western District of New York (Larimer, <u>J.</u>) awarded an adequate equitable remedy for violations under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 <u>et seq.</u>, related to Xerox Corporation's pension plan (the "Plan"). The plaintiffs-appellants ("Plaintiffs") "are Xerox employees who left the company in the 1980's, received lump-sum distributions of retirement benefits they had earned up to that point, and were later rehired." <u>Conkright v. Frommert</u>, 559 U.S. 506, 510 (2010). "The dispute giving rise to this case concerns how to account for [the Plaintiffs'] past distributions when calculating their current benefits—that is,

3

how to avoid paying [the Plaintiffs] the same benefits twice." Id. The defendants-appellees are Xerox, the Plan, and individually named retirement plan administrators (individually and collectively, the "Plan Administrator"). In our most recent decision in this case we determined that the Plan Administrator's method of calculating the Plaintiffs' current benefits violated ERISA's notice requirements and therefore could not be applied to the Plaintiffs' benefits. Frommert v. Conkright, 738 F.3d 522, 531–34 (2d Cir. 2013) ("Frommert III"). We remanded to the District Court to fashion, in its discretion, an equitable remedy providing appropriate retirement benefits to the Plaintiffs (we refer to these benefits as "New Benefits"). Id. at 534.

Selecting the equitable remedy of reformation, the District Court held that New Benefits should be calculated as if the Plaintiffs were newly hired on their return to Xerox. Frommert v. Becker, 153 F. Supp. 3d 599, 605–07, 615–17 (W.D.N.Y. 2016) ("January 2016 Decision"). In a separate decision and order, the District Court also determined that the Plaintiffs are entitled to prejudgment interest at the federal prime rate. Frommert v. Becker, 216 F. Supp. 3d 309, 316 (W.D.N.Y. 2016) ("November 2016 Decision").

We affirm.

4

BACKGROUND

We assume familiarity with our three prior decisions in this long-running case, as well as the Supreme Court's decision in <u>Conkright</u>.  <u>See</u> <u>Conkright</u>, 559 U.S. 506; <u>Frommert III</u>, 738 F.3d 522; <u>Frommert v. Conkright</u>, 535 F.3d 111 (2d Cir. 2008) ("<u>Frommert II</u>"); <u>Frommert v. Conkright</u>, 433 F.3d 254 (2d Cir. 2006) ("<u>Frommert I</u>"); <u>see also</u> <u>Testa v. Becker</u>, 910 F.3d 677, 679–81 (2d Cir. 2018) (describing litigation history).  We refer to the facts, history, and record of these and other prior proceedings only as necessary to explain our decision to affirm.

Throughout this litigation, the Plaintiffs have claimed that the Plan Administrator improperly calculated New Benefits under the Plan in violation of ERISA.  <u>See, e.g.</u>, <u>Frommert v. Conkright</u>, 328 F. Supp. 2d 420, 423 (W.D.N.Y. 2004).  The District Court initially granted summary judgment in favor of the Plan Administrator.  <u>Id.</u> at 424, 439.  We vacated, concluding that the Plan Administrator's method of accounting for distributions of prior benefits, and its resulting calculation of New Benefits, violated the Plaintiffs' rights under ERISA.  <u>Frommert I</u>, 433 F.3d at 256–57.

In a subsequent decision, we reviewed the District Court's method of calculating New Benefits as a matter of plan interpretation and concluded that the method was proper under the Plan. Frommert II, 535 F.3d at 117–18. We further held that the District Court could refuse to defer to the Plan Administrator's interpretation of the Plan. Id. at 119. The Supreme Court reversed the latter ruling, holding, as relevant here, that we had "erred in holding that the District Court could refuse to defer to the Plan Administrator's interpretation of the Plan . . . simply because [we] had found a previous related interpretation by the [Plan] Administrator to be invalid." Conkright, 559 U.S. at 522. On remand, the District Court held that the Plan Administrator's proposed method of calculating New Benefits by offsetting the lump sum distributions made to the Plaintiffs when they initially left Xerox reflected a reasonable interpretation of the Plan. Frommert v. Conkright, 825 F. Supp. 2d 433, 438–43 (W.D.N.Y. 2011). It also concluded that the Plan adequately notified participants of the offset. See id. at 444–47.

In our most recent decision, we disagreed with the District Court. Frommert III, 738 F.3d at 531–34. We held that the Plan Administrator's proposed offset approach was based on an unreasonable interpretation of the

6

Plan and that the Plan and its related documents, as interpreted and applied by the Plan Administrator, violated ERISA's notice provisions. Id. at 529–34. We therefore instructed the District Court to first determine on remand whether there existed an "appropriate" equitable remedy available to resolve the Plaintiffs' claims without resorting to plan interpretation. Id. at 534. "If the district court holds that the Plan's notice violations justify the imposition of an equitable remedy," we explained, "such a remedy will provide the relief that [the] Plaintiffs seek." Id. We also instructed that "if [the District Court] finds that no equitable remedy is available, it should separately consider [the] Plaintiff's unreasonable-interpretation claim," id. (emphasis added), meaning that if the court could devise an appropriate equitable remedy, it could forgo interpreting the Plan.

Following Frommert III, the District Court decided to reform the Plan as an appropriate equitable remedy under the circumstances. January 2016 Decision, 153 F. Supp. 3d at 615. It then set about exploring methods of calculating New Benefits that were consistent with reforming the Plan. Although the District Court surveyed several possible remedies, many of which had been endorsed at varying times by one or both parties, we focus on

7

three of these approaches, starting with the so-called "new hire" remedy that the District Court ultimately selected.

The District Court's new hire remedy is "to recalculate [the P]laintiffs' benefits, treating [the P]laintiffs upon their re-employment with Xerox as if they had been newly hired, with no offset whatsoever." Id. at 605. In other words, the remedy treats the Plaintiffs' return to Xerox as the start of a period of new employment, without any reduction of the Plaintiffs' retirement benefits to account for any prior benefit distributions or any credit for earlier years of service with Xerox. See id. at 606.

In selecting the new hire remedy, the District Court considered and rejected the "Layaou" and "actual annuity" approaches as ways to calculate benefits.[1] Id. at 611–15. Each of these remedies would have entailed, in effect, subtracting the unadjusted value of the Plaintiffs' original retirement benefits from their New Benefits. See Joint App'x at 66–69 (explaining actual annuity method), 69–70 (explaining Layaou method). We previously affirmed the District Court's adoption of the Layaou approach in Frommert II. But that

---

[1] The Layaou method is so-named because it was first applied in an earlier, related action. See Layaou v. Xerox Corp., 330 F. Supp. 2d 297, 304 (W.D.N.Y. 2004); see also Layaou v. Xerox Corp., 238 F.3d 205 (2d Cir. 2001).

approach came under heavy criticism from the Supreme Court in <u>Conkright</u>, which decried it variously as "an interpretation of the Plan that does not account for the time value of money," "actuarial . . . heresy," and "highly unforeseeable."[2]  559 U.S. at 519.

After outlining the deficiencies (which we do not recount in detail here) of each of the alternative approaches, and over the Plaintiffs' objections, the District Court adopted the new hire remedy to award the Plaintiffs New Benefits.  <u>See</u> <u>January 2016 Decision</u>, 153 F. Supp. 3d at 605, 610–12.  The District Court cited four principal reasons for doing so.

---

[2] At different times, the District Court also considered two other approaches: the "phantom account" method and the "actuarial equivalent" method, both of which subtract or offset the expected value of the prior lump sum distributions from the Plaintiffs' New Benefits.  <u>See, e.g.</u>, <u>Frommert I</u>, 433 F.3d at 260 (explaining phantom account method); <u>Testa</u>, 910 F.3d at 680 (same); <u>Frommert III</u>, 738 F.3d at 528 & n.8, 530 (explaining actuarial equivalent method).  Although in <u>Testa</u> we suggested, in dicta, that the phantom account method may be applied to similarly situated employees who were not plaintiffs in this action, <u>see</u> 910 F.3d at 684–85, there is no question that the resolution of the challenge here is squarely governed by <u>Frommert I</u>, which held that the phantom account method may not be applied to the Plaintiffs in this action, 433 F.3d at 263.  And in <u>Frommert III</u>, we held, as noted above, that a lack of notice prevented the District Court from applying any expected value method to the Plaintiffs.  738 F.3d at 534; <u>see also</u> <u>January 2016 Decision</u>, 153 F. Supp. 3d at 605–06.  The District Court also rejected a third method, the "no-offset" method, under which the Plaintiffs would accrue benefits for all their years of service without any reduction to account for the prior distributions.  <u>January 2016 Decision</u>, 153 F. Supp. 3d at 613–14.

First, at different stages of the litigation the Plaintiffs had agreed that the new hire remedy was appropriate. Id. at 610 ("Both sides have at times expressed some amenability to a new-hire remedy."); Transcript of Proceedings dated October 23, 2014, statement of Plaintiffs' counsel, Dist. Ct. Dkt. No. 280, at 4 ("[W]e are entitled to and we do still request . . . partial summary judgment that entitles the [P]laintiffs to be paid . . . at least as well as new hires."); Plaintiffs' Motion to Reenter Judgment, dated October 8, 2010, Dist. Ct. Dkt. No. 205, at 21 (Plaintiffs requesting that "at a minimum, [the District Court] . . . enter a judgment that orders [the Plan Administrator] to pay rehired employees no less than the pension that identically-situated new employees would receive"). In view of these prior statements, the Plaintiffs' claim that the new hire remedy is inequitable appears somewhat disingenuous.

Second, the remedy properly accounts for the time value of money and thus avoids the Supreme Court's main criticism of the Layaou approach. January 2016 Decision, 153 F. Supp. 3d at 612; see Conkright, 559 U.S. at 519.

Third, in Frommert III we stated that, at a minimum, rehired employees should not end up with lower benefits than similarly situated, newly hired

10

employees.  January 2016 Decision, 153 F. Supp. 3d at 605–06; Frommert III, 738 F.3d at 530–31.

And fourth, the new hire remedy, as the District Court found, "strikes a balance" between penalizing the Plaintiffs by subtracting the value of their prior distributions without proper notice and overpaying the Plaintiffs by allowing double benefits for the same period of service.  January 2016 Decision, 153 F. Supp. 3d at 615.

Having selected the new hire remedy to calculate the Plaintiffs' New Benefits, the District Court by later decision and order proceeded to pick a rate of prejudgment interest to apply to the award.  November 2016 Decision, 216 F. Supp. 3d at 311–12, 316.  The Plaintiffs asked the District Court to impose the New York statutory rate of nine percent, while the Plan Administrator urged the selection of the federal post-judgment interest rate, see 28 U.S.C. § 1961, which, "[a]s of October 14, 2016, . . . stood at 0.66%," November 2016 Decision, 216 F. Supp. 3d at 315.  Rejecting the Plaintiffs' proposed rate as too high and the Plan Administrator's as too low, the District Court chose the federal prime rate of 3.5 percent.  Id. at 315–16.

The Plaintiffs timely appealed both decisions.

11

On appeal, the Plaintiffs argue that both the new hire remedy and the awarded prejudgment interest (at the federal prime rate) are inadequate. We consider each argument in turn.

1. New Hire Remedy

We first address whether the District Court abused its discretion when it selected the new hire approach as an equitable remedy to redress the Plan Administrator's notice violations. See Chao v. Merino, 452 F.3d 174, 185 (2d Cir. 2006) ("We review the district court's fashioning of equitable remedies under ERISA for abuse of discretion.").[3]

As an initial matter, we note that the Plaintiffs do not challenge the District Court's finding that contract reformation was an appropriate equitable remedy in this case. Instead, the Plaintiffs argue that, having

---

[3] As we have recognized, "[t]he word 'abuse' in the 'abuse of discretion' standard is an unfortunate—and inaccurate—term of art" because "abuses of discretion" rarely, if ever, involve anything "as heinous as abuse." In re City of New York, 607 F.3d 923, 943 n.21 (2d Cir. 2010); see also In re Sims, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." (quotation marks omitted)).

decided to reform the Plan, the District Court should have chosen a calculation of New Benefits that was more favorable to them than the new hire approach. We are not persuaded.

Each of the considered equitable approaches for calculating the Plaintiffs' benefits has proven to be imperfect. Indeed, our decision in Frommert III foreclosed the possibility of applying any of the expected value methods. See 738 F.3d at 534. Meanwhile, although Conkright did not address equitable remedies, its criticism of the unadjusted value methods as failing to account for the time value of money is reason enough to disqualify those methods.[4] See 559 U.S. at 519. Nor, as the District Court found, does the no-offset method, which results in a clear windfall to the Plaintiffs, fare any better as a suitable remedy. See January 2016 Decision, 153 F. Supp. 3d at 613–14.

---

[4] The Plaintiffs attempt to distinguish the actual annuity method from the Layaou method by claiming that the former, an annuity, accounts for the time value of money. But the actual annuity method derives from the unadjusted value of what the Plaintiffs could have received as original retirement benefits. Indeed, as the Plaintiffs' own expert admitted, the actual annuity method and the Layaou method produce very similar New Benefits calculations. See Joint App'x at 330–31; see also Joint App'x at 70.

The new hire approach has its own flaws, insofar as it fails to fully count all years of service at Xerox, with an offset for the prior distributions made to the Plaintiffs when they first left Xerox, as the parties originally expected. See Frommert v. Conkright, 472 F. Supp. 2d 452, 455, 458 (W.D.N.Y. 2007) ("2007 Decision"). Nevertheless, the District Court did not abuse its discretion in selecting the new hire approach as an adequate equitable remedy. Among its significant advantages over other potential remedies, the new hire approach accounts for the time value of money, see Conkright, 559 U.S. at 519, but avoids the problems associated with the expected value methods described above and in Frommert III, 738 F.3d at 534. The approach has two more advantages to distinguish it in the context of this litigation. First, as we explained in Frommert III, the Plaintiffs are entitled to at least the new hire remedy. Id. at 530–31. Second, we agree with the District Court that the new hire approach better balances the dueling interests of the Plan Administrator and the Plaintiffs. See January 2016 Decision, 153 F. Supp. 3d at 610, 612, 614–15.

In urging a contrary conclusion, the Plaintiffs argue that the District Court improperly refused to consider two alternative theories of equitable

14

remedy, surcharge and estoppel. They claim that one or both theories might have justified a higher benefits award. But having determined that the District Court did not abuse its discretion when it reformed the Plan to grant the new hire remedy as adequate equitable relief, "we need not address whether relief would alternatively have been proper pursuant to different equitable remedies such as surcharge or estoppel." Amara v. CIGNA Corp., 775 F.3d 510, 532 (2d Cir. 2014). And the District Court, far from ignoring surcharge or estoppel, explicitly described them as "unnecessary." January 2016 Decision, 153 F. Supp. 3d at 613.

The Plaintiffs also argue that the District Court was affirmatively required to interpret the Plan. They claim that this in turn might have yielded a higher benefits award. But this argument runs headlong into Frommert III. There we stated, to the contrary, that the District Court did not need to engage in plan interpretation if it determined that an appropriate equitable remedy existed. 738 F.3d at 534; see DiLaura v. Power Auth., 982 F.2d 73, 76 (2d Cir. 1992) (observing that under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (quotation marks

15

omitted)). District courts generally may avoid interpreting a pension plan and instead fashion equitable remedies for ERISA violations where the plan is "significantly incomplete" and misleads its employees. See CIGNA Corp. v. Amara, 563 U.S. 421, 428, 438–43 (2011). Under those circumstances, a district court may, for example, "properly reform[ ] [a pension] plan to reflect the representations that the defendants made to the plaintiffs." Osberg v. Foot Locker, Inc., 862 F.3d 198, 215 (2d Cir. 2017) (quotation marks omitted).

The Plaintiffs themselves appear to have acknowledged this point. They informed the District Court that "[o]nce [the P]laintiffs are granted the equitable relief to which they are entitled for the undisputed notice violations, [the District Court] need not attempt to resolve the plan interpretation issue." Memorandum of Points and Authorities In Support of Plaintiffs' Motion for Entry of Judgment on Notice Issue, dated October 20, 2014, Dist. Ct. Dkt. No. 267-1, at 2. In this case, the District Court found that there was no reasonable plan interpretation as to which notice had been provided by Xerox. See January 2016 Decision, 153 F. Supp. 3d at 604–05; 2007 Decision, 472 F. Supp. 2d at 457 (noting that "virtually nothing is set forth in either the Plan or the [summary plan description]" to explain how to account for prior

16

distributions). The District Court was therefore entitled to reform the Plan

and employ the new hire approach as an equitable remedy in compliance

with our mandate in Frommert III. See 738 F.3d at 534.

The District Court's selection of the new hire remedy falls within the

"range of permissible decisions available under an abuse of discretion

standard." Osberg, 862 F.3d at 215 (quotation marks omitted). For these

reasons, we affirm the District Court's decision to use the new hire approach

as an equitable remedy to redress the Plan Administrator's notice violations.

2. Prejudgment Interest

We next address the District Court's award of prejudgment interest at

the federal prime rate. As an initial matter, the District Court enjoyed broad

discretion to decide whether to award prejudgment interest in this case. See

S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996). In exercising

such discretion, the District Court had to consider "(i) the need to fully

compensate the wronged party for actual damages suffered, (ii) . . . fairness

and the relative equities of the award, (iii) the remedial purpose of the statute

involved, and/or (iv) such other general principles as are deemed relevant by

the court." Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir.

17

2000) (quotation marks omitted).  Those same factors also inform a district court's choice of a particular interest rate,  id., which "must not result in over-compensation of the plaintiff,"  Wickham Contracting Co. v. Local Union No. 3, IBEW, 955 F.2d 831, 834 (2d Cir. 1992).  "We have allowed discretionary awards of prejudgment interest . . . when the awards were fair, equitable and necessary to compensate the wronged party fully."  Id. at 835.

In its November 2016 Decision, the District Court concluded that the Plaintiffs were entitled to prejudgment interest at the federal prime rate.  The court specifically found that the prime rate of 3.5 percent "strikes an appropriate balance" and "fairly compensate[s]" the Plaintiffs.[5]  November 2016 Decision, 216 F. Supp. 3d at 316.  The court also carefully explained why it rejected the New York statutory rate of nine percent (proposed by the Plaintiffs) as too high and the federal post-judgment interest rate of 0.66 percent (proposed by the Plan Administrator) as too low.  Id. at 315.  We affirm the District Court's decision to use the prime rate for three reasons.

---

[5] This decision was clarified in another decision entered on May 4, 2017.  Frommert v. Conkright, 2017 WL 3867795, at *1 (W.D.N.Y. May 4, 2017).  That decision addressed primarily the mechanics of implementing the District Court's prejudgment interest award—mechanics that are not at issue in this appeal.

First, it had broad discretion to grant prejudgment interest and to select a rate.

Second, it carefully considered all the relevant factors in determining whether prejudgment interest was warranted, and, if so, what the rate should be. And finally, it thoroughly explained its reasoning for using the federal prime rate.

## CONCLUSION

We have considered the Plaintiffs' remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM**.